## E. B. ATKINSON v. J. H. DOWNING.

(Filed 27 March, 1918.)

**1. Parent and Child—Custody of Child.**

The prima facie right of parents to the care and custody of their infant children is a natural and substantive one which will not be interfered with by the courts unless the good of the child clearly requires it.

**2. Same—Child's Welfare.**

While this parental right is fully recognized in this State, it is further held that the welfare of the child is also entitled to full consideration and on especial facts may become controlling in the disposition of its custody.

**3. Same—Habeas Corpus.**

It appearing in the present case that a female child, now 11 years of age, has been in the care and custody of her grandparent since the death of her mother, four years ago and more; that said grandparent is amply able to take care of her, and that he has done so affectionately and properly; that she has a secure and comfortable home with desirable neighbors and associates; that the father, the petitioner, though spoken of as a man of good character, could not and was not circumstanced to give the child the same dependable advantages of education and religious training and environment necessary to the child's welfare, the judgment of the Superior Court awarding the child to the present custody of the grandparent will not be disturbed on appeal.

**4. Appeal and Error—Parent and Child—Habeas Corpus—Review of Evidence.**

*Semble*, on appeal in *habeas corpus* proceedings as to care and custody of children, the Supreme Court may not regard as final the findings of the Superior Court, but may consider and pass upon the whole record, including the testimony.

HABEAS CORPUS proceedings involving the right to present custody of an 11-year-old female child, heard before *Bond, J.,* at October Term, 1917, of BLADEN.

The petitioner being the father of the child and the respondent being the maternal grandfather.

The court heard the testimony and made findings of fact thereon, in part, as follows:

1. That petitioner is the father of the child, and the child is now about 11 years of age.

2. That the mother of the child died at the home of the mother's father seven or eight years ago. That several months prior to the death of his daughter, at her request, the respondent, her father, took her to his house, and at his expense took care of her, furnished medical attention, bore all the expenses of same and paid the costs of her funeral. That the petitioner has never paid any part of the same to the respondent.

3. That a very short time before the death of the mother of the said child, she, in the presence of her husband, she being sick at the time, stated that she expressly desired that the grandparents of the child should keep it to raise, and in the presence of the petitioner, his wife stated that her husband had not properly cared for and provided for her. That she had to die at 22 years of age, and that his neglect of her was the cause of it.

4. That respondent, Downing, has sufficient means to take good care of said child, is of good character, and is fond of said child and anxious to do all that is necessary to give said child proper attention. That he owns about 1,000 acres of land in Bladen County; that the father of said child, with the exception of a few small gifts, has done nothing to raise said child since her mother's death or to meet any of the expenses of the child's being raised to this time.

5. That the petitioner has married a second wife. He owns no home and has no property, real or personal; that he works for wages and did not properly provide for his first wife when she was living; that said child has first cousins of her age to associate with where she now lives at her grandfather's; that said girl has been sent to school by the grandfather and can now read and write fairly well for her age; that she goes to Sunday-school and is visited and attended to by her aunts; that a schoolhouse is soon to be erected near enough to the home of the grandfather to furnish better educational facilities than heretofore; that there is no evidence tending to show that said wife wants the girl in her home.

6. That on this hearing, witnesses testified that the general character of the petitioner, father of the girl, is considered good, but by reputation he did not provide properly for his first wife, and the court finds the last of said facts to be true. As to his character, the court finds his general reputation is considered good. He behaves himself properly and is considered a well-behaved man as to truth and treatment of other people. No witness testified that his general character is bad, but the witnesses who testified as to his character stated that he had never been considered a thrifty man. The court further finds he neglected his first wife and has done practically nothing to help raise the child.

7. The court further finds from the evidence that the petitioner is now working in a knitting mill in the capacity of a machinist, and is getting $2.50 per day for the time he works. That he owns no property, either real or personal; that in the past he has worked at times and at other times has failed to be employed, and has frequently moved from place to place.

8. The court further finds that the interests of the said child will be best promoted by letting her live with her grandfather, where she has

been since she was about three or four years of age, she being now about 11.

The subsequent findings do not materially affect the legal aspects of the controversy.

Upon his findings, the court entered judgment as follows:

"Upon the foregoing findings of fact, it is adjudged by the court that the best interests of the child require that she be allowed to stay at her grandfather's, and it is ordered and adjudged by the court that the writ be dismissed, and that said child remain in the custody of her grandfather; that her father be allowed to visit her, and that said father is hereby enjoined and restrained from removing or having said child removed from the custody of her grandfather. It is also adjudged by the court that the costs of this proceeding be paid by the petitioner, E. B. Atkinson."

From this judgment the petitioner appealed.

*J. Alden Lyon, H. L. Lyon, and A. H. Pait for plaintiff.*
*MacLean, Varser & MacLean for defendant.*

HOKE, J. It is fully recognized in this State that parents have prima facie the right of the custody and control of their infant children, a natural and substantive right not to be lightly denied or interfered with except when the good of the child clearly requires it. *In re Mercer Fain,* 172 N. C., 790; *In re Mary J. Jones,* 153 N. C., 312; *Newsome v. Bunch,* 144 N. C., 15; *Latham v. Ellis,* 116 N. C., 30.

In the case of *Mary Jane Jones,* it is held that "this parental right should prevail whenever, being of good character, they have the capacity and disposition to care for and rear their children properly in the walk of life in which they are placed, a right growing out of the parents' duty to provide for their helpless offspring, not only enforcible as a police regulation, but grounded in the strongest and most enduring affections of the human heart. A substantial right, therefore, not to be forfeited or ignored except in some way or for some reason established or recognized by the law of the land." It is also held with us in well-considered cases, and they are in accord with the rule now generally prevailing, that this right of the parents is not universal and absolute; but even as between individuals, the same may be modified and disregarded when it is made to appear that the welfare of the child clearly requires it. *In re Alderman,* 157 N. C., 507; *In re Turner,* 151 N. C., 474; *In re Samuel Parker,* 144 N. C., 170.

In *Alderman's case, supra,* it was held that on proceedings in *habeas corpus* by a father for the possession of his child in the custody of the mother, the mother's possession of the child will not be disturbed if it

appears that therein the physical and moral and spiritual welfare of the child will be the better preserved.

In *Turner's case* the opinion quotes with approval from Chancellor Kent, to the effect "That the father, and on his death the mother, is generally entitled to the custody of their infant children, inasmuch as they are their natural protectors for maintenance and education, but the courts of justice may, in their sound discretion and when the morals or safety or interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere."

And in the case of *Samuel Parker,* it was said in the concurring opinion, that in this country the disposition of the child rests in the sound legal discretion of the court, and it will be exercised as the best interests of the child may require, citing *Newsome v. Bunch,* 142 N. C., 19; Tiffany on Persons and Domestic Relations, p. 308; Shouler on Domestic Relations, sec. 240.

And, further: "The best interest of the child is being given more and more prominence in cases of this character and on especial facts has been held the paramount and controlling feature in well-considered decisions," citing *Bryan v. Lynn,* 104 Ind., 227; *In re Welsh,* 74 N. Y., 299; *Kelsey v. Greene,* 69 Cann., 291.

Considering the facts presented in the light of these principles, we concur in his Honor's view that, under present conditions, the child should be allowed to remain with the grandfather, who with the grandmother has had the care and maintenance of the child since its mother's death, seven or eight years ago; that it has a safe and pleasant home with desirable associates and neighbors, and where it is being well cared for and instructed, while the conduct of the father, though he is spoken of as a man of good character, has not hitherto been such as to give assurance of that environment and watchful and intelligent care and attention that would justify the Court in removing the child from its present home and surroundings.

We were cited by appellee to several authorities to the effect that the findings of the court below were conclusive with us except on an entire lack of evidence to support them. These cases were principally in civil causes of an ordinary kind heard on report and findings of a referee and of a judge on exceptions noted in which the position is undoubted. In cases of the present kind, and as now advised, while there is seeming conflict of authority on the subject, we are inclined to the opinion that the entire case, including the findings of the court, is subject to review on appeal. The question is not presented, however, as, in the present instance, we see no reason for disturbing the conclusions of the court below, either of fact or law, and on the record the judgment must be

Affirmed.