IN RE JOHN COSTON AND ELLEN COSTON, MINORS.

(Filed 2 April, 1924.)

**1. Juvenile Courts—Judgments—Appeal and Error—Statutes.**

Public Laws of 1919, now C. S., ch. 90, art. 2, secs. 5-39 *et seq.*, are valid constitutional provisions for the uncared for and destitute children of the State under certain administrative and judicial powers conferred upon the clerks of the Superior Court, etc., as juvenile courts with power to initiate and examine and pass upon cases coming within the statutory provisions, and where, following the statutory procedure, these juvenile courts have determined and adjudged that a certain child comes within their jurisdiction, such action is within the judicial powers conferred, and fixes the status of the child as a ward of the State, and the condition continues until the child becomes of age, unless and until such adjudication is modified or reversed by further judgment of the juvenile court or by the judge of the Superior Court hearing the case on appeal as the statute provides. C. S., 5058, 5039, 5054.

**2. Same—Habeas Corpus.**

The statutory remedy by appeal being provided from the determination of the juvenile court from its judgment that a certain child comes within the statutory provisions, and the status of the child has been ascertained by the juvenile court as being that of a ward of the State, the writ of *habeas corpus* is not available to the parent or other claiming the child, unless in rare and exceptional cases wherein the welfare of the child has not been properly provided for. C. S., 5454.

**3. Same—Parent and Child—Notice.**

Where the juvenile court has examined into the condition of a child, and has adjudged that the child is of wandering or dissolute parents, and living with its poor and dependent grandparents, who had acquiesced in the investigation and its results, it is unnecessary to the valid adjudication fixing the child as a ward of the State and taking its custody accordingly, that the parents should have been notified to be present at the investigation, though such course is to be commended when the child is living with its parents or under their control, or are living at the time within the jurisdiction of the court. C. S., 5046, 5047.

**4. Same—Jurisdiction—Conflict of Courts.**

Where the parent of a child that has been adjudicated a ward of the State under the statute relating to juvenile courts afterwards claims the possession of the child, the procedure requires that she make application to the juvenile court that had adjudicated the matter in order to avoid conflict and uncertainty as to the status or condition of the child, to the end that an investigation be made of the circumstances in the course and practice of the courts.

HABEAS CORPUS proceedings instituted on petition of Mrs. Dolly Ruth Fuller for possession and control of her two minor children (John and Ellen Coston) by a former husband, and heard before his Honor, *Grady, J.,* at Raleigh, N. C., on 11 January, 1924. From the pleadings, admissions, affidavits and exhibits in the cause and recognized as trustworthy evidence in his Honor's judgment, it appears that at the time of the proceedings instituted and writ served, the two children, aged respectively 11 and 8 years, were in the care and keeping of respondent, John J. Phoenix, as superintendent of the North Carolina Children's Home Society, Inc., at Greensboro, N. C., not a State institution but one for the care of such children, duly approved for the purpose by the State Board of Charities and Public Welfare, and that they had school facilities and were otherwise well provided and cared for and were so placed under a decree of the juvenile court of Duplin County, entered, after full investigation, on 21 June, 1923, and in which these children were adjudged to be dependent and neglected and were ordered to be placed at said institution, and under the rules and regulations thereof, as wards of the court and subject to its further orders as their well-being might require.

That at the time of this decree entered, and for a long time prior thereto, the former husband and father of these children had left his wife and his whereabouts was unknown. That the mother had for quite a while been roaming about in a questionable manner, and at the time of said investigation she was living in improper association with her present husband, a corporal in the U. S. Army, moving from place to place, in Baltimore and elsewhere, claiming that they were married. That petitioner was not divorced from her former husband until August, 1923, after present decree entered. The children at the time of the hearing had before the juvenile court were making their home in Duplin County with their grandparents, Mr. and Mrs. Tobe Tucker, very poor people, the father being an inefficient person, having an allowance from the county of Duplin as a pauper, and the grandmother dependent on the aid of others, and the children were not sufficiently clothed or fed or cared for.

That these conditions were the subject of concern to the welfare officer of the county, and after conference with the grandparents, a warrant

was issued and served on the children, and they were brought before the juvenile court, attended by their grandmother; their condition was fully examined into, and the court finding that they were both dependent and neglected children within the meaning of the Juvenile Court Act, being article 2, chapter 90, it was so adjudged, and that as wards of the court they be committed to the institution at Greensboro, where they now are.

That on the morning of their departure to the institution they were brought to the train by their grandmother, with whom they resided, etc.

There was also evidence at the hearing for the petitioner tending to show, and his Honor so finds, that no summons had been served on either of the parents of the children prior to the investigation before the juvenile court, and that neither of said parents were present, and that the petitioner was *now* a suitable person to have charge of her children, and it was thereupon adjudged that the proceedings before the juvenile court were altogether null and void, and that, "subject to the supervision and oversight of the courts of North Carolina, or wherever they may reside," the respondent John J. Phoenix within the next sixty days deliver said minor children to the petitioner.

To which said judgment respondent excepts and appeals to the Supreme Court.

*Fowler, Crumpler & Butler for petitioner.*
*Rivers D. Johnson for respondent.*

HOKE, J.  In 1919 the General Assembly enacted a statute known as the Juvenile Court Act, making provision for the care and control of the delinquent and dependent and neglected children of the State, substantially as it now appears in chapter 90, article 2, of the Consolidated Statutes, secs. 5039-5067, inclusive.  The statute, after conferring exclusive jurisdiction of the general subject on the Superior Courts of the State, for the more efficient administration of its provisions has established juvenile courts in every county as separate parts of the Superior Court, constituting the clerks of the Superior Courts as judges of the juvenile courts, with provisions for establishing additional juvenile courts for the larger cities and towns.  The validity of the statute has been upheld, and many of its provisions construed and applied in *S. v. Burnett,* 179 N. C., 735; *S. v. Coble,* 181 N. C., 554; *In re Hamilton,* 182 N. C., 44, and other cases.

From the principles approved in these decisions and in further consideration of the statute and its terms and purpose, it appears that the law has primarily conferred upon these juvenile courts the power to initiate and examine and pass upon cases coming under its provisions. That these powers are both judicial and administrative, and when,

having acquired jurisdiction, a juvenile court has investigated a case and determined and adjudged that the child comes within the provisions of the law and shall be controlled and dealt with as a ward of the State, this being in the exercise of the judicial powers in the premises, fixes the status of the child, and the condition continues until the child is of age, unless and until such adjudication is modified or reversed by a further judgment of the court itself or by the Superior Court judge hearing the cause on appeal as the statute provides. C. S., 5039-5054. And *Brickell v. Hines,* 179 N. C., 254, is in support of the general principle.

Doubtless if it should be made to appear that in the administrative features of the law the child is being neglected or subjected to such cruelty, etc., as to require immediate action, the Superior Court, in the exercise of its supervisory powers, may interpose for its relief, but unless so provided for by statute, the writ of *habeas corpus* is not ordinarily allowed as a substitute for an appeal, and where an appeal lies, such course should be pursued. As said in the opinion in the case of *In re Hamilton, supra,* "The supervision and oversight of the Superior courts should be exercised in an orderly way by appeal from the juvenile court where such is provided by statute, and otherwise by appropriate writ where no appeal is available."

In the present case there is no complaint as to the administrative features of the law, nor any suggestion that the child is not being wisely and properly cared for in its present home; and as to the adjudication of the juvenile court fixing the status of the child as a ward of the State, there is ample provision in the statute, and at any time, for either a modification or reversal of the judgment, and for an appeal to the Superior Court in case the application is denied. Thus, in section 5054 of the law, it is provided:

"*Modification of Judgment; Return of Child to Parents.* Any order or judgment made by the court in the case of any child shall be subject to such modification from time to time as the court may consider to be for the welfare of such child, except that a child committed to an institution supported and controlled by the State may be released or discharged only by the governing board or officer of such institution.

"Any parent or guardian, or, if there be no parent or guardian, the next friend of any child who has been or shall hereafter be committed by the court to the custody of an institution other than an institution supported and controlled by the State, or to the custody of any association, society or person, may at any time file with the court a petition verified by affidavit setting forth under what conditions such child is living, and that application for the release of the child has been made to and denied by such institution, association, society or person, or that

institution, association, society or person has failed to act upon such application within a reasonable time. A copy of such petition shall at once be served by the court upon such institution, association, society or person, whose duty it shall be to file a reply to the same within five days. If, upon examination of the petition and reply, the court is of the opinion that an investigation should be had, it may, upon due notice to all concerned, proceed to hear the facts and determine the question at issue, and may return such child to the custody of its parents or guardian, or direct such institution, association, society or person to make such other arrangements for the child's care and welfare as the circumstances of the case may require.

"Any child, while under the jurisdiction of the court, shall be subject to the visitation of the probation officer or other agent of the court authorized to visit such child."

And in the closing portion of section 5055, "In any case arising under this article the court (juvenile court) may determine as between parents or others whether the father or mother, or what person shall have the custody and direction of said child, subject to the provisions of the preceding sections." And the right of appeal from an adverse ruling on these applications is directly provided for in section 5058.

And we do not concur in the view that the proceedings in the juvenile court of Duplin are void because no notice was served on either parent. When the child is living with its parents or under their control, and they are at the time within the jurisdiction of the court, such notice should always be given, and even when beyond the jurisdiction, it is provided that notice shall be sent them by registered mail, but a perusal of the portions of the law more directly applicable will clearly disclose that such service is not always essential, and in our opinion, on the facts presented in this record, the service as made should be held sufficient, and the court had full jurisdiction of the case. The welfare of the child being the controlling feature of such an investigation, it was never contemplated that a court charged with the duty should be powerless to proceed because its parents could not be readily found, or should prove utterly inefficient and untrustworthy. Accordingly, in sections 5046 and 5047 of the statute it is, among other things, provided:

"In case the summons cannot be served or the party fails to obey the same, and in any case when it shall be made to appear to the court that such summons will be ineffectual, or that the welfare of the child requires that he shall be brought forthwith into the custody of the court, a warrant may be issued on the order of the court either against the parent or guardian or other person having custody of the child or with whom the child may be, or against the child himself. The sheriff or other lawful officer of the county in which the action is taken shall serve

all papers as directed by the court, but the papers may be served by any person delegated by the court for that purpose.

"Upon the return of the summons or other process, or after any child has been taken into custody, at the time set for the hearing the court shall proceed to hear and determine the case in a summary manner."

Considering the record in view of these, the statutory provisions applicable, it appearing that at the time of the hearing and of service had the whereabouts of the father of the child was unknown; that the mother was living in questionable relations with her present husband, and moving from place to place, and at this time seems to have been out of the State; that the grandparents with whom the child was residing were inefficient people, especially the grandfather, who had a pauper's allowance from the county of Duplin, and both he and his wife were themselves dependent upon others, and comparatively helpless; and the record showing further that, pursuant to the statutory provision, a warrant was issued and served on both of the children, who were produced and present at the hearing, accompanied by their grandmother, who was also present, and that the latter, after the decree, herself brought the children to the train to be taken to the home to which they had been committed, we are of opinion as stated that the juvenile court of Duplin had full jurisdiction of the cause; that its adjudication holds until reversed or modified as the law requires (on application made directly to that court), and that his Honor therefore was without power to direct the discharge of these children in *habeas corpus* proceedings.

On the facts of this record, if the mother desires to have the decree reversed, as stated, and the children restored to her, she should apply to the juvenile court of Duplin, where the matter may be fully investigated and the decision reviewed on appeal, according to the course and practice of the court, and as the right and justice of the case may require. And without intimation as to how the case should be decided, we deem it not improper to say that in the administration of this or any other portion of this beneficent statute, the parental right should always be given full consideration. Speaking to this question and to the spirit in which the law should always be administered, the Court, in *Burnett's case,* said:

"And if the guardianship of the child is taken over by the State they are allowed, on proper application, at any time to have their child brought before the court, its condition inquired into, and further orders made concerning it except, as shown, when committed to a State institution, and then they may apply directly to the Superior Court. And in any sane and just administration of this measure, the family relationship and this parental right, which are at the very basis of our social order and among its chiefest bulwarks, must always be given full consideration.

"Speaking to this question in 20 R. C. L., 601-602, quoted with approval in *Means' case*, 176 N. C., 311, the author says: 'The natural affection of parents is ordinarily the best assurance of the child's welfare, and the object to be sought for the child is not so much the luxury and social advantages, which more wealthy guardians might be able to give it, as the wholesome, intellectual and moral atmosphere likely to be found in its natural home.' But this right and relationship, important as it is, is not absolute and universal, and may be made to yield when it is established that the welfare of the child and the good of the community clearly requires it. This has been held with us in numerous decisions concerning the disposition of children under the general principles of the common law and equity prevailing in this State. *In re Warren*, 178 N. C., 43; *In re Means*, 176 N. C., 307; *Atkinson v. Downing*, 175 N. C., 244; *In re Fain*, 172 N. C., 790. And, undoubtedly, it may be so provided by an act of the Legislature in the well ordered exercise of the police power."

It has been suggested that on a proper perusal of the statute any juvenile court should have the power to examine into and pass upon the conditions of dependent or delinquent children held as wards of the State, but while this may be true as to the administrative features of the law, and the care and placing of such child, we think, in reference to the adjudication fixing the child's position as a ward of the State, the application to modify or reverse should be made to the original court, to the end that in this respect there should be no conflict or uncertainty as to the status and condition of the child.

For the reasons stated, we are of opinion that the judgment of the Superior Court be reversed, and it is so ordered.

Reversed.