In the Matter of DEANNA BLALOCK (SUZANNE CARTER).

(Filed 2 May, 1951.)

**1. Appeal and Error § 6c (3)—**

   A sole exception and assignment of error to the judgment or to the signing of the judgment presents only whether the facts found by the court support the judgment and whether error in matters of law appears upon the face of the record.

**2. Courts § 2—**

   Jurisdiction of the person of a defendant can be acquired only by service of process upon him or by his voluntary appearance.   G.S. 1-103.

**3. Appearance §§ 1, 2a—**

   Whether an appearance is special or general is to be determined not by its form but by its character; an appearance for the purpose of testing the jurisdiction of the court over the person of defendant is a special appearance, and an appearance for the purpose of invoking the judgment of the court in any manner on any question other than that of jurisdiction of the court over the person of defendant, such as the court's jurisdiction over the subject matter, is a general appearance.

**4. Appearance § 2b—**

   A general appearance waives any defects in the jurisdiction of the court for want of valid summons or of proper service.

**5. Appearance § 2a—**

   A purported special appearance in an adoption proceeding for the purpose of moving to dismiss for want of jurisdiction of the court over the minor child, the subject of the proceeding, is a general appearance waiving want of service upon movants.

**6. Courts § 18—**

   Where a domestic relations court acquires jurisdiction of a child under sixteen upon adjudication in proceedings for its custody that such minor is a ward of the State, such jurisdiction continues until the minor becomes of age or until the issuance of a valid court order to the contrary.   G.S. 7-103, G.S. 110-21.

**7. Same: Adoption § 8—**

   An interlocutory order tentatively approving the adoption of a minor and expressly providing that the minor should remain a ward of the juvenile court, entered by the clerk upon the consent of the child's mother, does not oust the jurisdiction of the domestic relations court theretofore obtained in a proceeding for the custody of the child upon its adjudication that the child was a ward of the State.   Furthermore, under G.S. 7-103 the domestic relations court would be included in the term "court" as used in the clerk's order.   "Tentative" and "tentatively" defined.   G.S. 110-23.

**8. Adoption § 4: Clerks of Court § 7—**

An adoption proceeding is before the clerk of the Superior Court. G.S. Chap. 48, G.S. 1-7, G.S. 1-13.

**9. Judgments § 20a—**

An "interlocutory order" is provisional or preliminary and does not determine the issues in the action, and is subject to change by the court during the pendency of the action to meet the exigencies of the case.

**10. Courts § 18: Clerks of Court § 7—**

Domestic relations courts and clerks of court are separate branches of the Superior Court, the former being given exclusive original jurisdiction involving the custody of juveniles, G.S. 7-103, and the latter jurisdiction of adoption proceedings with power to award the custody of a child to a petitioner pending final decree of adoption. G.S. Chap. 48, G.S. 1-7, G.S. 1-13.

**11. Statutes § 5d—**

Statutes relating to the same subject will be construed together so that effect may be given to all provisions of each if possible by any fair and reasonable interpretation.

**12. Courts § 18—**

A domestic relations court has jurisdiction to modify an order for the custody of a child entered in a proceeding in which both the mother and child were before the court personally, even though at the time of entering the order of modification neither the child nor its purported adoptive parents are within its territorial jurisdiction, *a fortiori* where the purported adoptive parents have brought themselves within the jurisdiction of the court by a general appearance. G.S. 110-36.

**13. Courts § 19—**

Persons awarded temporary custody of a child who is under the supervision and care of a domestic relations court have no right to take the child out of the State without the written consent of the State Board of Public Welfare, notwithstanding that they may have obtained the consent of the superintendent of a county board of welfare. G.S. 110-52.

**14. Adoption § 4: Courts §§ 14, 18: Judgments § 28½—Foreign decree of adoption of child domiciled here, entered upon suppression of facts, held void.**

Where a domestic relations court has obtained jurisdiction of a child born in North Carolina upon its adjudication that the child is a ward of the State, and the domicile of the child has not been changed, a decree of adoption entered by a court of another state upon the suppression by petitioners therein of the facts that the child was a ward of our domestic relations court, that its mother had moved in said court for modification of an order for the custody of the child, that the petitioners in such foreign court acquired possession of the child upon assurances that they would abide by the laws of this State, and that they failed to obtain the consent

of the State Department of Welfare of North Carolina or of any court of our State for removal of the child from this State, is void.

**15. Domicile § 1—**

Upon birth, an illegitimate child acquires the domicile of its mother, and such child is without power to change its domicile until its majority or emancipation.

**16. Judgments § 28 ½ : Constitutional Law § 28—**

A judgment obtained in another state may be challenged in this State by proof of fraud practiced in obtaining the judgment which may have prevented an adverse trial of the issue, or by showing want of jurisdiction either of the subject matter or of the person of the defendant.

Appeal by Mr. and Mrs. Robert K. McGowen from *Patton, Special Judge,* at August Civil Term, 1950, of Buncombe.

Proceeding in the Domestic Relations Court of Buncombe County, North Carolina, pertaining to the custody of a dependent child, Deanna Blalock, born out of wedlock to Mary Blalock (now Mrs. J. W. Higgins), on 15 December, 1943, on petition of the mother for modification of order of 26 March, 1947, placing the child in the custody of Mr. and Mrs. L. E. Carter, on account of alleged changed conditions,—heard in said court on motion of Mr. and Mrs. Robert K. McGowen, the appellants, to dismiss the proceeding for lack of jurisdiction as hereinafter shown,—and heard again in Superior Court of Buncombe County, North Carolina, on appeal thereto by the movants Mr. and Mrs. McGowen from judgment of said Domestic Relations Court, the hearing in Superior Court being on the record as certified by the Clerk of said Domestic Relations Court.

The petition of the mother, Mrs. Higgins, subscribed and sworn to 13 January, 1950, as shown in the record, is addressed to the Domestic Relations Court of Buncombe County, and—(deleting immaterial words) —represents that she is a resident of said county; "that Deanna Blalock . . . a child . . . under the age of sixteen years . . . is . . . within the meaning of the law of this State a dependent child . . . in that the said child . . . by order of this court dated March 26, 1947, . . . was placed in the custody of L. E. Carter and wife, who at the time planned to adopt her"; that "for reasons of their own they felt unable to do so and turned her over to the Buncombe County Department of Public Welfare"; that "at that time petitioner was in such a condition as to be unable to care for said child; however, petitioner is now able and willing to provide said child a suitable home, adequate support and proper care, and desires the custody of said child." Thereupon, the petitioner "prays the court to inquire into the matter herein set forth and make such orders in the premises as the court may deem proper and for the best interests of the said child."

The record also shows that a notice, styled "Summons," was issued 14 February, 1950, by the Clerk of Domestic Relations Court, addressed to "Marcella Ponderly and Robert Kenneth McGowen, Hendersonville, N. C.," commanding them to appear before the Domestic Relations Court on 27 February, 1950, in regard to the custody of, and bring with them "Deanna Blalock, *alias* Suzanne Carter, *alias* Betsy McGowen, represented to this court as being a dependent child and there to abide by such order as may be made with reference to said child." But the record fails to show that the notice was served on those to whom it is addressed.

Nevertheless, the record does show that on 17 March, 1950, Mr. and Mrs. Robert K. McGowen, through their attorneys Williams & Williams, entered an appearance in the Domestic Relations Court of Buncombe County, State of North Carolina,—entitled "SPECIAL APPEARANCE AND MOTION TO DISMISS,"—"for the purpose, and only the purpose of moving to dismiss the above entitled matter, on the grounds that this court does not now have jurisdiction over said cause, for the following reasons :

"1. That the minor child, subject of this action, has resided and has been domiciled in the city of Chicago, State of Illinois, for more than (1) year preceding the institution of this action, and by virtue thereof is subject exclusively to the jurisdiction of the courts of the State of Illinois.

"2. That the said Mr. and Mrs. Robert K. McGowen, in whose custody the said minor child has been since approximately the first day of September, 1948, are citizens and residents of the city of Chicago, State of Illinois, and are not subject to the jurisdiction of this court, and have not been served with summons or process of any kind in this action."

The record also shows these matters of record :

(1) On 25 February, 1947, Mr. and Mrs. L. E. Carter, who resided at Sky Camp, Route 1, Asheville, N. C., filed a petition in the Domestic Relations Court of Buncombe County, N. C., praying that inquiry be made into the matter of the custody of Deanna Blalock, an illegitimate child of Mary Blalock,—a dependent child within the meaning of the law of this State, and such order to be made in the premises as the court may deem proper and for the best interests of the child. A copy of this petition together with a summons was served on Mary Blalock on 14 March, 1947. Judgment on this petition was entered on 26 March, 1947. The judgment recites that the proceeding being heard, with petitioners and their counsel, and the respondent Mary Blalock and Deanna Blalock personally present, the court found these facts from the evidence and sworn admissions of the respondent: (In pertinent part) That Deanna Blalock was born at Crossnore, North Carolina, on 15 December, 1943, to the respondent Mary Blalock, who herself was born in Avery County, North Carolina, 16 March, 1918; that respondent Mary Blalock is not

able or competent to care for said child and to provide it a fit home or adequate support; that the petitioners L. E. Carter and wife, Bonnie Carter, are fit and suitable persons to have the custody of said child; and that they are solvent, in good health and entirely capable of providing said child a suitable home, adequate support and proper care and education: "Whereupon, with the written consent of the respondent Mary Blalock (who has also agreed to consent to the adoption of said child by Mr. and Mrs. Carter)," the court awarded the custody and control of Deanna Blalock to L. E. Carter and wife,—but made provision for Mary Blalock to visit the child. And Mary Blalock signed and sealed her name in written consent to the entry of the above judgment.

(2) Thereafter on 27 March, 1947, Carter and wife, citizens and residents of Buncombe County, North Carolina, filed a petition before the Clerk of Superior Court of said county for the adoption for life of the minor child then in their custody,—the name to be changed to Mary Suzanne Carter. The petition so filed set forth that the mother has executed a written consent for the adoption of said child by the petitioners, and that she is the only necessary party to give consent for adoption. And thereupon, on the same day, 27 March, 1947, the Clerk of the Superior Court of said county entered an order referring the matter to the Superintendent of Public Welfare of said county with directions to investigate, and report on the conditions and antecedents of the child, etc.

(3) Thereafter on 23 February, 1948, the said Clerk of Superior Court entered an interlocutory order, in which after reciting that it appearing to the court the petitioners, Carter and wife, are residents of Buncombe County, North Carolina, that the minor was born in Avery County, North Carolina, and is now living in the custody of the petitioners at Asheville, N. C.; and that "the mother of said child has executed a written consent for the adoption of said child by the petitioners," the adoption of the child by the petitioners was "tentatively" approved, but it was ordered therein that "said minor . . . be and she is hereby placed in the care and custody of petitioners until further orders of this court." And the court further "expressly ordered that this order shall be provisional only and may be rescinded or modified at any time prior to the final order of adoption which shall be made not less than one year or more than two years after this date," and that "until said final order of adoption the said minor shall be and remain a ward of this court, and its care shall be under the supervision of George H. Lawrence, Superintendent of Public Welfare of Buncombe County, unless otherwise directed by the court."

(4) Thereafter at Asheville, N. C., on 9 September, 1948, George H. Lawrence, Superintendent, reported to the Clerk of Superior Court of Buncombe County, summarily stated, that on account of illness of Mrs. Carter, Mr. Carter had arranged for the return of the child, and she was

returned on 27 May, 1948; and that the Welfare Department arranged for her to be placed in a boarding home. And the Superintendent recommended that since the child had been returned by Mr. and Mrs. Carter, and was then under the supervision of the Welfare Department, a nonsuit in the adoption be issued.

(5) Thereafter on 22 September, 1948, upon hearing the report of George H. Lawrence, Superintendent of Public Welfare of Buncombe County, and it appearing therefrom that since the interlocutory order signed the 23rd day of February, 1948, placing said child with the petitioners, Leon Earle Carter and Bonnie Brookins Carter, his wife, they do not now desire to adopt the minor child, Mary Suzanne Carter (Deanna Helen Blalock) and have returned her to the Department of Public Welfare, Buncombe County, North Carolina, at Asheville, N. C., the Clerk of Superior Court "ordered, adjudged and decreed" that the said interlocutory order "be revoked and rescinded, and that the final order be not issued and that this proceeding be, and the same is hereby dismissed at the cost of the petitioner."

The record discloses that it was after the adoption proceeding was so dismissed that the petition of the mother, first hereinabove described was filed.

The record also shows that on 17 May, 1950, the North Carolina State Board of Public Welfare petitioned the Domestic Relations Court of Buncombe County to be permitted to appear as *amicus curiae* in the court for the purpose of filing briefs and presenting argument upon the question of jurisdiction raised by Mr. and Mrs. Robert K. McGowen, as hereinabove set forth. The permission was granted by order of court 19 May, 1950.

The record also contains copies of various affidavits, and of copies of court records filed in the proceeding in the Domestic Relations Court. Among the records so filed is purported transcript of an adoption proceeding in the County Court of Cook County, Illinois, entitled "In the Matter of the Petition of Robert K. McGowen and Marcella P. McGowen, His Wife, to Adopt Deanna Blalock, a Minor," instituted in March, 1950, and numbered "128 496." In the petition therein the petitioners name "Deanna Blalock, a minor, Mary Blalock Higgins, the mother of said minor, Leon E. Carter and Bonnie Carter, his wife, parties defendant in this cause," and ask, among other things, that the name of the minor child be changed to Elizabeth Lynn McGowen. And the record therein contains a notice to defendants, but it also contains form of an affidavit of Robert K. McGowen to the effect that "Mary Blalock Higgins, Leon E. Carter and Bonnie Carter, defendants, reside out of this State, and on due inquiry cannot be found within this State." Service of notice as to them is not shown in the transcript of the record.

And pursuant to hearing on 10 June, 1950, the Judge of Domestic Relations Court of Buncombe County entered a judgment in pertinent part as follows:

"The above named child first came to the attention of this court on February 25, 1947 upon a petition filed by L. E. Carter and wife; summons was served March 14, 1947 on the illegitimate mother of said child, Mary Blalock, and the court took jurisdiction of the child, after a lengthy investigation and hearing the court entered a judgment on March 26, 1947 placing the child in the custody of Mr. and Mrs. Carter—with the written consent of the mother.

"Immediately thereafter, to wit: On March 27, 1947, the Carters started an adoption proceeding in the Buncombe County Superior Court, to which the mother, Mary Blalock, consented. An interlocutory order was entered February 23, 1948 and the child remained in the possession of the petitioners, but as 'a ward of this (Superior) Court and its care shall be under the supervision of George H. Lawrence, Superintendent of the Public Welfare Department of Buncombe County, unless otherwise directed by this Court.' "

"Thereafter the Carters abandoned said adoption proceeding and returned said child to the custody of the Buncombe County Welfare Department which, on September 9, 1948, requested the Superior Court to nonsuit the adoption proceeding; an order of revocation was entered September 22, 1948.

"Said child remained in the custody of the Buncombe County Welfare Department and under the jurisdiction of this Court; the Buncombe County Welfare Department sought the assistance of Mrs. Lucinda Cole, Superintendent of the Henderson County Welfare Department, in placing said child; she did seek a home for said child and was contacted by Mr. and Mrs. Robert K. McGowen to whom she granted the temporary possession in Henderson County but on condition that if the said McGowens desired the permanent custody of and intended to adopt said child the laws of the State of North Carolina must be complied with. No petition was filed and no adoption proceeding was begun in Henderson County. However, in September 1948 (sometime after the 8th day) they took said child to their home in Chicago, Illinois, with the consent of Mrs. Cole, but upon assurance to her by Mrs. McGowen that the McGowens would comply with the requirements of the laws of this State; said temporary removal of said child was without the knowledge or consent of the Buncombe County Department of Public Welfare or of this Court.

"Meantime, the mother, Mary Blalock, had married one J. W. Higgins, and with him had established a home in Asheville, Buncombe County, North Carolina; on January 13, 1950 she filed a petition in this Court for the custody of said child; a copy of said petition and a summons were

sent to Mrs. Lucinda Cole, Superintendent of the Henderson County Department of Public Welfare, to be served on the temporary custodians of said child. By letter dated February 7, 1950 Mrs. Cole advised this Court for the first time that said child was in the possession of the McGowens and 'at the present time this family is visiting out of the State but they will be glad to return whenever you notify them to appear for the hearing. If you can let me know a few days prior to the hearing I shall appreciate it. Also, the family, if possible, would like the hearing before the first of March, as they had planned to spend the month of March in Florida.'

"It does not appear that the summons and petition were served on the McGowens but they were advised of the proceeding for on March 17, 1950 the McGowens filed a 'special appearance and motion to dismiss' alleging that this Court had no jurisdiction of said child. . . .

"This Court holds as a conclusion of law that having acquired jurisdiction over said child in 1947 it has not lost or surrendered said jurisdiction for that the adoption proceeding begun by the Carters on March 27, 1947 in the Buncombe County Superior Court was never completed and that when said Carters surrendered the child to the Buncombe County Welfare Department on September 9, 1948 said Department took said child as agents and officers of this Court; and subject to the jurisdiction and supervision of same; that notwithstanding the fact that the McGowens took said child to Illinois in September 1948 where, as they aver, she has lived since; said child being an unemancipated infant is *non sui juris,* and cannot of her own volition select, acquire or change her domicile; *Duke v. Johnston,* 211 N.C. 171 (175), and cases cited.

"Deanna Blalock (sometimes known as Suzanne Carter) was temporarily placed in the possession of the McGowens by the Henderson County Welfare Department as an agent of this Court; she did not lose her domicile within North Carolina (where her mother continued to live and reside) and the purported adoption of said child by the McGowens in the County Court of Cook County, Illinois, was void and of no effect.

"IT IS THEREFORE ADJUDGED that the special appearance be vacated; that the McGowens' motion to dismiss this action be denied and that said respondents, Mr. and Mrs. Robert McGowen, appear with said child in this Court and answer the petition of said Mary Blalock Higgins on its merits."

"To the entry of the foregoing judgment and the signing thereof, the respondents, Mr. and Mrs. Robert K. McGowen, excepted in apt time and gave notice of appeal in open court and further notice waived."

On appeal from the judgment of the Domestic Relations Court, as above shown, the Judge presiding over the August 1950 Term of Buncombe County Superior Court found these facts:

In re Blalock.

"(1) That the above named child became a ward of the Domestic Relations Court of Buncombe County on a petition filed by L. E. Carter and wife, summons being served on the mother of the child and the Order entered on March 26, 1947, placing the child in the custody of Mr. and Mrs. Carter with the written consent of the mother.

"(2) On March 27, 1947, L. E. Carter and wife instituted an adoption proceeding in the Superior Court of. Buncombe County, to which proceeding the mother of the child consented, and an interlocutory order was entered on February 23, 1948, in said adoption proceeding and the child continued in the possession of Mr. and Mrs. Carter but as a ward of the Court with its care under the supervision of George H. Lawrence, Superintendent of Welfare of Buncombe County, unless otherwise directed by the Court.

"(3) Thereafter, L. E. Carter and wife abandoned said adoption proceeding, returned the child to the custody of the Buncombe County Welfare Department, and on September 22, 1948, the adoption proceeding was terminated by order of the Court.

"(4) Said child remained in the custody of the Buncombe County Welfare Department and under the jurisdiction of the Court at all times thereafter, although the Buncombe County Welfare Department sought the assistance of Mrs. Lucinda. Cole, Superintendent of the Henderson County Welfare Department in placing said child and Mrs. Cole placed the temporary custody of the said child with Mr. and Mrs. Robert K. McGowen on condition that if the said McGowens desired permanent custody of said child and did adopt it, the laws of the State of North Carolina must be .complied ·with.

"(5) That the temporary custody of the said child was placed with the McGowens in Henderson County, North Carolina, and they thereafter took said child to their home in Chicago, Illinois, with the consent of Mrs. Cole but without the consent of this Court or any other Court, and upon the assurance by the McGowens that they would comply with the requirements of all the laws of the State of North Carolina in respect to said child, said temporary removal from the State of North Carolina being without the consent or knowledge of the Buncombe County Welfare Department or of the Court.

"(6) That the mother of the said child has heretofore filed a petition in the Domestic Relations Court of Buncombe County for the custody of the said child and a copy of the petition and summons was sent to Mrs. Lucinda Cole, Superintendent of the Henderson County Welfare Department, to be served on the temporary custodians of said child.

"The Court was then advised that the child was in the possession of the McGowens and that they would like a hearing before the first day of March, as they planned to spend the month of March in Florida.

"On March 17, 1950, the McGowens filed a Special Appearance and Motion to Dismiss, alleging that the Court had no jurisdiction of the child; that since the McGowens have assumed the temporary custody of the said child they have undertaken in the State of Illinois to institute an adoption proceeding for the adoption of the said child."

And upon the foregoing Findings of Fact the Court made the following Conclusions of Law:

"First: That the Domestic Relations Court of Buncombe County, North Carolina, acquired jurisdiction over said child in the year 1947 and has not lost or surrendered said jurisdiction since said date.

"Second: That said child was removed from the State of North Carolina in violation of the statutory laws of the State of North Carolina and without the consent of the Domestic Relations Court of Buncombe County which had jurisdiction over said child.

"Third: That said child has never lost her domicile within the State of North Carolina and that the purported adoption of the said child in the State of Illinois is void and of no effect."

Thereupon, it was "Ordered, Adjudged and Decreed by the Court that said Special Appearance and Motion to Dismiss be, and the same is hereby Overruled and Denied, and the judgment of the Domestic Relations Court heretofore entered is hereby Affirmed in all respects and this cause is remanded to the Domestic Relations Court of Buncombe County for further proceeding."

"To the foregoing Judgment and the signing thereof, Mr. and Mrs. Robert K. McGowen, appearing specially and for no other purpose than to determine the jurisdiction of the Court, Object and Except and give notice, in open Court, of appeal to the Supreme Court of North Carolina," and assign error.

*Narvel J. Crawford for petitioner, appellee.*

*R. R. Williams and Robert Williams, Jr., for appellants.*

*Drury B. Thompson for State Board of Public Welfare as Amicus Curiae.*

Winborne, J.  The sole assignment of error presented on this appeal is predicated upon exception to the judgment and the signing of it. Such assignment of error raises only the questions as to (1) whether the facts found by the judge of the Domestic Relations Court of Buncombe County, North Carolina, and reiterated by the judge of the Superior Court on appeal, support the judgment from which appeal is taken, and (2) whether error in matters of law appears upon the face of the record. *Culbreth v. Britt Corp.,* 231 N.C. 76, 56 S.E. 2d 15, and cases cited.  See

also *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351; *S. v. Black,* 232 N.C. 154, 59 S.E. 2d 621; *Rice v. Trust Co.,* 232 N.C. 222, 59 S.E. 2d 803; *Smith v. Furniture Co.,* 232 N.C. 412, 61 S.E. 2d 96; *Paper Co. v. Sanitary Dist.,* 232 N.C. 421, 61 S.E. 2d 378; *Johnson v. Barham,* 232 N.C. 508, 61 S.E. 2d 374; *Hoover v. Crotts,* 232 N.C. 617, 61 S.E. 2d 705; *Weaver v. Morgan,* 232 N.C. 642, 61 S.E. 2d 916; *Gibson v. Ins. Co.,* 232 N.C. 712, 62 S.E. 2d 320; *Perkins v. Sykes, ante,* 147, 63 S.E. 2d 133, and numerous other cases.

In the light of the record, and facts found by the court, the movants, Mr. and Mrs. Robert K. McGowen, raise two questions, stated in reverse order: (1) Does the Domestic Relations Court of Buncombe County, North Carolina, have jurisdiction over the persons of movants? (2) Does said court have jurisdiction over the child Deanna Blalock, the subject of the action, or proceeding? Both questions are answered in the affirmative.

As to the first question: Jurisdiction over the person of a defendant can be acquired only in two ways: (1) By service of process upon him, whereby he is brought into court against his will; and (2) by his voluntary appearance and submission. 3 Am. Jur. 784. G.S. 1-103.

Concededly, in the case in hand, process issued to Mr. and Mrs. Mc-Gowen was not served on them. It remains, therefore, to inquire into the effect of their appearance.

An appearance may be either general or special. The distinction between the two is not so much in the manner in which, or the proceeding by which, the appearance is made, as in the purpose and the effect of an appearance. "The test is the relief asked,—the law looking to its substance rather than to its form. If the appearance is in effect general, the fact that the party styles it a special appearance will not change its character. The question always is what a party has done, and not what he intended to do." *Scott v. Life Asso.,* 137 N.C. 515, 50 S.E. 221; *Woodard v. Milling Co.,* 142 N.C. 100, 55 S.E. 70; *Motor Co. v. Reaves,* 184 N.C. 260, 114 S.E. 175; *Shaffer v. Bank,* 201 N.C. 415, 160 S.E. 481; *Buncombe County v. Penland,* 206 N.C. 299, 173 S.E. 609; see also 3 Am. Jur. 782; McIntosh N. C. P. & P. 323.

A special appearance by a defendant is for the purpose of testing the jurisdiction of the court over his person. *Scott v. Life Asso., supra. Motor Co. v. Reaves, supra; Denton v. Vassiliades,* 212 N.C. 513, 193 S.E. 737; *Williams v. Cooper,* 222 N.C. 589, 24 S.E. 2d 484. See also 3 Am. Jur. 782; McIntosh N. C. P. & P. 323.

An appearance merely for the purpose of objecting to the lack of any service of process or to a defect in the process or in the service of it, is a special appearance. In such case the defendant does not submit his person to the jurisdiction of the court. 3 Am. Jur. 783.

On the other hand, a general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person. 3 Am. Jur. 782, 6 C.J.S. 66, McIntosh N. C. P. & P. 323. *Scott v. Life Asso., supra; Motor Co. v. Reaves, supra.*

A general appearance waives any defects in the jurisdiction of the court for want of valid summons or of proper service thereof. *Motor Co. v. Reaves, supra; Bank v. Derby,* 215 N.C. 669, 2 S.E. 2d 875; *Credit Corp. v. Satterfield,* 218 N.C. 298, 10 S.E. 2d 914; *Williams v. Cooper,* 222 N.C. 589, 24 S.E. 2d 484; *Wilson v. Thaggard,* 225 N.C. 348, 34 S.E. 2d 140.

Indeed, in *Williams v. Cooper, supra,* in opinion by *Barnhill, J.,* it is said: "An objection that the court has no jurisdiction of the subject matter of the action is considered in law as taken tö the merits and not merely to the jurisdiction of the court over the person of the defendant and an appearance for the purpose of entering such objection is, in fact, a general appearance which waives any defect in the jurisdiction arising either for want of service on the defendants or from a defect therein." See cases there cited.

Applying these principles to the case in hand, if the movants had, as is said in *Motor Co. v. Reaves, supra,* confined their motion to dismiss for want of jurisdiction over their persons, all would have been well with them, but when they asked the court to adjudge as to want of jurisdiction over the subject of the action, they converted their special appearance into a general one. It follows, therefore, that the movants have waived any defect in the jurisdiction arising for want of service on them,—and they are in court. *Williams v. Cooper, supra.*

This brings us to the second question: As to whether the Domestic Relations Court of Buncombe County, North Carolina, has jurisdiction over the child, Deanna Blalock, the subject of the proceeding.

The establishment of Domestic Relations Courts was authorized, and the machinery therefor provided by the General Assembly of 1929. See P.L. 1929, Chapter 343. While the act as originally passed did not apply to Buncombe County, it was made applicable thereto by an amendatory act—Chapter 208 of P.L. 1941. The act authorizing the establishment of such court, as amended from time to time, became sub-chapter IV of Chapter 7 of General Statutes entitled "Courts." And the General Statutes became effective 31 December, 1943, and have been in effect since then.

Section 3 of Act of 1929, now G.S. 7-103, provides, among other things, that Domestic Relations Courts, where established, shall have, and be vested with all the power, authority, and jurisdiction theretofore vested

in the juvenile courts of North Carolina,—said power, authority, and jurisdiction being as fully vested in the Domestic Relations Court as if therein particularly set forth in detail; and in addition thereto such Domestic Relations Courts shall have exclusive original jurisdiction over, among others, "(c) all cases involving the custody of juveniles, except where the case is tried in Superior Court as a part of any divorce proceeding." See *In re Morris,* 224 N.C. 487, 31 S.E. 2d 539, and *S. c.,* 225 N.C. 48, 33 S.E. 2d 243.

What then are the "power, authority and jurisdiction" given to juvenile courts? The Juvenile Court Act, enacted by the General Assembly of 1919, Chapter 97 of P.L. 1919, later becoming Article 2 of Chapter 90 of the Consolidated Statutes, on the subject "Child Welfare," and now Article 2 of Chapter 110 of the General Statutes, on the same subject, provides that the Superior Courts shall have exclusive original jurisdiction of any case of a child less than sixteen years of age residing in or being at the time within the respective districts "who are in such condition or surroundings or in such improper or inefficient guardianship or control as to endanger the morals, health, or welfare of such child." This jurisdiction when obtained in the case of any child shall continue for the purposes of the statute on "Child Welfare" during the minority of the child, unless a court order be issued to the contrary. G.S. 110-21. *S. v. Coble,* 181 N.C. 554, 107 S.E. 132; *In re Coston,* 187 N.C. 509, 122 S.E. 183; *In re Morris, supra.* See also *Phipps v. Vannoy,* 229 N.C. 629, 50 S.E. 2d 906.

This section of the statute, G.S. 110-21, also imposes upon the court the constant duty to give to each child subject to its jurisdiction such oversight and control in the premises as will conduce to the welfare of such child and to the best interest of the State. *In re Morris, supra.*

And for the purpose of hearing cases coming within the provisions of the statute the General Assembly established in each county of the State a separate part of the Superior Court of the district, such part to be called "The Juvenile Court" of the particular county, and appointed and authorized the Clerk of Superior Court of each county to act as judge of the Juvenile Court in the hearings of such cases within such county. G.S. 110-23.

The express intention of this statute is "that in all proceedings under its provisions the court shall proceed upon the theory that a child under its jurisdiction is the ward of the State and is subject to the discipline and entitled to the protection which the court should give such child under the circumstances disclosed in the case." G.S. 110-24.

Moreover, any order or judgment made by the court in the case of any child shall be subject to such modification from time to time as the court may consider to be for the welfare of the child, except in certain cases

not pertinent here. G.S. 110-36. *In re Morris, supra;* see also *S. v. Burnett,* 179 N.C. 735, 102 S.E. 711; *In re Coston, supra.*

The procedure for initiating a proceeding and for notice or summons to the parent is prescribed in the statute G.S. 110-25 to G.S. 110-28. And it is also provided that upon the return of the summons or other process, the court shall proceed to hear and determine the case in a summary manner. And that upon such hearing, the court, if satisfied that the child is in need of care, protection or discipline of the State, may so adjudicate, and may find the child to be delinquent, neglected, or in need of more suitable guardianship, and thereupon may, among other provisions, commit the child to the custody of a relative or other fit person of good moral character, subject, in the discretion of the court, to the supervision of a probation officer and the further orders of the court, or render such further judgment or make such further order of commitment as the court may be authorized by law to make in any given case. G.S. 110-29.

In the *Coston case, supra,* this Court in an opinion by *Hoke, J.,* referring to the Juvenile Court Act, as construed and applied in *S. v. Burnett, supra; S. v. Coble, supra,* and *In re Hamilton,* 182 N.C. 44, 108 S.E. 385, had this to say: "From the principles approved in these decisions and in further consideration of the statute and its terms and purpose, it appears that the law primarily conferred upon these juvenile courts the power to initiate and examine and pass upon cases coming under its provisions. That these powers are both judicial and administrative, and when, having acquired jurisdiction, a juvenile court has investigated the case and determined and adjudged that the child comes within the provisions of the law and shall be controlled and dealt with as a ward of the State, this being in the exercise of the judicial powers in the premises, fixes the status of the child, and the condition continues until the child is of age, unless and until such adjudication is modified or reversed by a further judgment of the court itself or by the Superior Court judge hearing the cause on appeal as the statute provides." See also *In re Prevatt,* 223 N.C. 833, 28 S.E. 2d 564.

Applying the provisions of the statute as so interpreted by this Court to the facts found by the judge of the trial court, as set forth in the judgment from which this appeal is taken, it clearly appears that the Domestic Relations Court of Buncombe County (standing in the stead of the Juvenile Court), by the proceedings had on the petition of the Carters in March, 1947, fixed the status of Deanna Blalock, as a ward of the State, which condition continues, and will continue until she is of age, unless and until such adjudication be modified or reversed by a further judgment of the court itself or by the Superior Court judge hearing the cause on appeal as the statute provides.

But the appellants say, in effect, that whatever jurisdiction the Domestic Relations Court obtained over the child by virtue of the order of that court dated 26 March, 1947, no longer exists for several reasons: First, that the order was terminated by the interlocutory order entered by the Clerk of Superior Court of Buncombe County on 2 September, 1947, in the adoption proceeding instituted by the Carters in that that order was a "court order . . . issued to the contrary" within the meaning of G.S. 110-21. This position is untenable. See opinion by *Hoke, J.,* in the *Coston case, supra.* Moreover, the statute expressly declares that the term "court" when used in the Juvenile Courts Act without modification refers to the juvenile courts established as provided therein. G.S. 110-23. See also *In re Hamilton, supra; In re Coston, supra; In re Prevatt, supra.* And since the "power, authority and jurisdiction" of the juvenile courts, G.S. 7-103, is vested in Domestic Relations Courts, the term "court" would refer to the latter.

On the other hand, a proceeding for adoption of a minor child, under the statute pertaining thereto, Chapter 48 of General Statutes, read in connection with the provisions of G.S. 1-7 and G.S. 1-13, is before the Clerk of Superior Court.

And the statute provides that when all the prescribed conditions satisfactorily appear the court "may *tentatively* approve the adoption and issue an order giving the care and custody of the child to the petitioner," and within two years of "the interlocutory order" the court shall complete the proceeding by an order granting letters of adoption, or, in its discretion by an order dismissing the proceeding; that the effect of any adoption so completed shall be retroactive to the date of the application; that during this interval the child shall remain the ward of the court and shall be subject to such supervision as the court may direct; and that the order granting letters of adoption shall state whether for the minority or for the lifetime of such child and shall have the effect forthwith to establish the relation of parent and child between the petitioner and the child. G.S. 48-5.

Here it is noted that the word "tentatively," as used in this statute, is the adverbial form of the word "tentative" which Webster defines "as of the nature of an attempt, experiment or hypothesis to which one is not finally committed; making trial; testing."

It is noted also that the order tentatively approving the adoption is denominated "interlocutory order." Such an order is provisional or preliminary, and does not determine the issues in the action but directs some further proceedings preliminary to a final decree. McIntosh N. C. P. & P., Section 614, p. 686. *Johnson v. Roberson,* 171 N.C. 194, 88 S.E. 231; *Russ v. Woodard,* 232 N.C. 36, 59 S.E. 2d 351.

Indeed, an interlocutory order differs from a final judgment in that an interlocutory order is "subject to change by the court during the pendency of the action to meet the exigencies of the case." See *Russ v. Woodard, supra,* and cases cited.

Thus it appears that the General Assembly has created both Domestic Relations courts and Clerks of Superior Court as separate branches of the Superior Court. To the former is given exclusive original jurisdiction over all cases involving the custody of juveniles, G.S. 7-103, and to Clerks of Superior Courts jurisdiction of proceedings for the adoption of minor children with right, incidental to temporary approval of application for adoption, to "issue an order giving the care and custody of the child to the petitioner." Chapter 48 of G.S. and G.S. 1-7 and G.S. 1-13.

And for the purpose of learning and giving effect to the legislative intention, all statutes relating to the same subject are to be compared and so construed in reference to each other that effect may be given to all provisions of each, if it can be done by any fair and reasonable interpretation. *Alexander v. Lowrance,* 182 N.C. 642, 109 S.E. 639.

In the light of this rule of construction, applied to the two statutes now being considered, we regard it clearly the intention of the General Assembly that the Domestic Relations Courts have the exclusive original jurisdiction in all cases of a child coming within the purview of the Juvenile Court Act and the Domestic Relations Court Act, which, when once acquired, and the status of the child is fixed, continues during the minority of the child.

And we regard it equally clear that the provision in the adoption statute that the court (the Clerk), if it be satisfied that the adoption be for the best interests of the child "may tentatively approve the adoption and issue an order giving the care and custody of the child to the petitioner" during the testing period, so to speak, is provisional, and is not intended to oust the jurisdiction of the Domestic Relations Court in a case involving question of custody of such child.

Secondly, appellants contend that since neither the child nor they, styled adoptive parents, are within the bounds of the State of North Carolina, and are in the State of Illinois, the Domestic Relations Court of Buncombe County, North Carolina, is without power to enforce its adjudication which is an essential to jurisdiction. In taking this position appellants lose sight of the fact that the petition filed by the mother is for the modification of an order of the Domestic Relations Court entered in the exercise of exclusive original jurisdiction acquired over both the mother and the child in a proceeding involving the custody of the child. The power to modify such order is expressly granted to the court by statute, G.S. 110-36, referred to hereinabove with citations of pertinent cases. And the question whether under such statute a court may alter

or modify its decree as to the custody of the children, in the absence of the parent or the child from its territorial jurisdiction, case annotators say, has been resolved, by the great weight of decisions, in favor of the existence of such power in the court. See Annotation 70 A.L.R. 526 of pertinent subject—citing among other cases *Hersey v. Hersey,* 271 Mass. 545, 171 N.E. 815, 70 A.L.R. 518. See also *In re Morris,* 225 N.C. 48, 33 S.E. 2d 243.

Indeed, the appellants are now in court. And the cases of *In re DeFord,* 226 N.C. 189, 37 S.E. 2d 516, and others cited and relied upon by appellants are distinguishable in factual situation.

Thirdly, appellants say "there was no violation of the court order or court jurisdiction when they took the child to their home, etc." As to this, attention is directed to the findings of fact made by the trial court and to the statute G.S. 110-52, a section of Article 4 of Chapter 110 of General Statutes, as rewritten by Section 3 of Chapter 609 of 1947 Session Laws of North Carolina, effective 1 July, 1947, which declares that "no child shall be taken or sent out of the State for the purpose of placing him in a foster home or in a child-caring institution without first obtaining the written consent of the State Board of Public Welfare . . ." The terms "he" or "his" or "him" used in the statute is made to apply to a female as well as to a male. G.S. 110-56.

Moreover, it is provided in G.S. 110-55, a section of Article 4 of Chapter 110 of General Statutes, that "every person acting for himself or for an agency who violates any of the provisions of this Article . . . shall, upon conviction thereof, be guilty of a misdemeanor and punished by fine of not more than two hundred dollars or by imprisonment for not more than six months, or by both such fine and imprisonment."

Lastly, while appellants in the statement of facts in their brief, say that the petitioner commenced this proceeding on 13 January, 1950, that they, appellants, first heard of the existence of this proceeding by a letter which was received some time after 7 February, 1950; that upon discovery that the matter had not been concluded in North Carolina, appellants, on 10 March, 1950, filed a petition for adoption of the child under the laws of the State of Illinois in the County Court of Cook County, Illinois, and that a final adoption decree was entered in which facts were found upon which jurisdiction of the Illinois Court was determined; and that appellee had opportunity to raise the question of Illinois jurisdiction, and upon failing so to do is estopped to deny the jurisdiction of that court.

In this connection it is noted that the Illinois Revised Statutes 1947, Chapter 4, pertaining to adoption of children, in Sec. 1-2 provides that the petition for adoption shall state:

"1. The name, if known, the sex, and the place and date of birth of the child sought to be adopted; and

"2. The name, if known, of the person or organization having the legal custody of the child; and

"3. The name, if known, of each of the parents or of the surviving parent of such child; and whether such parent or parents are or is a minor or otherwise under any legal disability; and

"4. That the child has resided in the home of the petitioners at least six consecutive months immediately preceding the filing of the petition, if such is the fact . . .," and, that "the petition shall be verified by the petitioner."

In the light of this Illinois statute, while the petition states that the child Deanna Blalock was born at Crossnore, Avery County, North Carolina, on 15 December, 1943, and that Mary Blalock, the mother, is the sole legal parent of said child, there is no disclosure of the facts (1) that the child became a ward of the Domestic Relations Court of Buncombe County, North Carolina, in March, 1947, a proceeding involving question of the custody of the child, and that the mother is moving in said court for modification of order made in March, 1947; (2) nor as to the circumstances under which they, the petitioners-appellants, acquired possession of the child; (3) nor as to the assurances given by them in respect to the child; (4) nor as to their removal of the child from North Carolina without, first, having obtained the consent of the State Department of Welfare of North Carolina, or of any court,—facts found by the trial court in present proceeding. Nor is there allegation of facts which would work a change of the domicile of the child.

Moreover, the judgment of the Illinois court indicates upon inspection that it is predicated upon the facts alleged, and there is no finding in respect of the matters so withheld from the petition.

Hence, we hold that the conclusions of law made by the trial court that the child has never lost her domicile in the State of North Carolina and that the purported adoption of the child in the State of Illinois is void and of no effect, are well founded and proper.

The Conflict of Laws, by Joseph H. Beale, Vol. 1, Chapter 2, on the subject of Domicile, declares that every person must have a domicile of origin; that this domicile comes into being as soon as the child becomes at birth an independent person; that this domicile is retained until it is changed in accordance with law; that if the child be illegitimate it takes its mother's domicile, *Thayer v. Thayer*, 187 N.C. 573, 122 S.E. 307; that there can be no change of domicile without an intention to acquire the new dwelling as a home, or as it is often phrased, without an *animus manendi*. Hence "an unemancipated infant, being *non sui juris*, cannot of his own volition, select, acquire, or change his domicile." *Thayer v. Thayer, supra; Duke v. Johnston*, 211 N.C. 171, 189 S.E. 504. See also *Allman v. Register, post*, 531.

Moreover, the Conflict of Laws, *supra,* Vol. 2, on the subject of adoption, states that jurisdiction to adopt would seem to depend strictly on common domicile of both parties, since the status of both is affected.

A judgment obtained in another State may be challenged in this State by proof of fraud practiced in obtaining the judgment which may have prevented an adverse trial of the issue, or by showing want of jurisdiction either of the subject matter or as to the person of the defendant. See *Hat Co. v. Chizik,* 223 N.C. 371, 26 S.E. 2d 871, and cases there cited.

For reasons stated, the judgment below is
Affirmed.