W. B. WEAVER, JR., v. B. F. MORGAN, Sheriff of RANDOLPH COUNTY, and All Other Law Enforcement Officers of RANDOLPH COUNTY.

(Filed 22 November, 1950.)

**1. Appeal and Error § 6c (2)—**

Exceptions and assignments of error to the findings of fact must point out specifically and distinctly the alleged errors, and an exception "to the foregoing findings of fact" is a broadside exception and is insufficient to challenge the sufficiency of the evidence to support the findings or any one of them.

**2. Same—**

An exception to the signing of the judgment presents only the question whether error of law appears on the face of the record, and is insufficient to bring up for review the findings of fact.

**3. Appeal and Error § 29—**

Exceptions in the record not set out in appellant's brief are deemed abandoned. Rule 28.

**4. Elections § 1—**

The requirement that a petition for an election on the question of prohibiting the sale of beer and wine in a county shall be signed by 15% of the registered voters of the county who voted for Governor in the last general election, *is held* to refer to the total number of votes cast for Governor in such election and does not require that each signer of the petition should have personally voted for a gubernatorial candidate in such election. G.S. 18-124 (b).

**5. Appeal and Error § 28—**

The grouping of cases cited in the brief does not authorize the use of the names of such cases throughout the brief without giving the citation of such cases. Rule 28.

Appeal by plaintiff from *Sharp, Special Judge,* at May Term, 1950, of Randolph.

Civil action to restrain the sheriff, and all other law enforcement officers of Randolph County, from enforcing the law against the sale of beer and wine in said county, for that the election held 25 March, 1950, on the question of the sale of beer and wine was, and is invalid for matters to which the findings of fact made by the court hereinafter shown relate.

Plaintiff alleges in his complaint that he is a resident, citizen and taxpayer of Randolph County, North Carolina, and is duly licensed by the United States Government, the State of North Carolina, the county of Randolph, and the city of Randleman to engage in, and is engaged in selling wine and malt beverages in said county, and that he is one of a general class of approximately fifteen licensed malt beverages dealers in

said county, and that he brings this action in behalf of himself and others of the class named similarly situated, and engaged in the business of selling wine and malt beverages.

The cause was heard in Superior Court upon (1) complaint of plaintiff, used as an affidavit, (2) oral testimony, (3) affidavits, and (4) admissions and argument of counsel. Thereupon the court entered judgment in which substantially these findings of fact were made, to portions of which, indicated within parentheses, plaintiff excepts—the numbering being inserted:

1. That in March, 1948, John G. Prevette, R. A. Gaddis and Zell Brown were appointed members of the Board of Elections for Randolph County, and each took the oath of office on 10 April, 1948, and, acting as such Board of Elections, conducted the two primary elections, and the general election in 1948, and two special elections in 1949, and their right to exercise the powers of such Board was not challenged prior to 23 January, 1950.

2. That on 19 January, 1950, a petition, purporting to be drawn under General Statutes 18-124, requesting an election on the question of the sale of beer and wine in Randolph County, and consisting of 344 pages and containing 3,620 signatures, was presented to the Board of Elections of said county, constituted as set forth in preceding paragraph; that thereupon the Board of Elections employed the services of Miss Iola Lowdermilk and approximately twenty-five paid helpers to check the petition; ("that the checking was done under the instruction and general supervision of the Board of Elections of Randolph County but the actual work was done by the paid checkers who consulted from time to time with one or more members of the Board of Elections"); (This is covered by assignment of error #1); that on 21 January, 1950, the Board determined (1) that 15,824 persons voted for Governor in the 1948 general election; (2) that fifteen per cent of this number is 2,374; (3) that the petition contained more than 2,374 signatures of registered voters of Randolph County; and (4) that the petition was legally sufficient and met the requirements of the law; that thereupon the Board called a beer and wine election as provided by General Statutes 18-124 for 25 March, 1950, and duly advertised the election as required by law, and opened the registration books for the registration of new voters as required by law, keeping them open on two Saturdays, to wit: 25 February, 1950, and 4 March, 1950, under its supervision.

3. That on 23 January, 1950, plaintiff in this action called upon the said members of the Board of Elections to resign on the ground that each of them had vacated his office on the Board by reason of subsequent qualification in another office, and on 2 February, 1950, W. F. Betts and others instituted a *quo warranto* action to remove each of the mem-

bers of said Board, and on 8 March, 1950, by judgment of court, Brown and Gaddis were removed as members of the Board,—Brown, because of double office holding, and Gaddis, because he was at the time a candidate for office of justice of the peace; (and "that there was no appeal from this judgment in the *quo warranto* proceeding"); (This is covered by assignment of error #2).

4. Thereafter on 9 March, 1950, the chairman of the State Board of Elections appointed T. F. Bulla and Albert Taylor to fill the offices from which Brown and Gaddis had been removed, and on 10 March, 1950, they, Bulla and Taylor, took the oath of office as members of the Board of Elections of Randolph County; that thereafter, the Board, as then constituted, voted to proceed, without interruption, with the beer and wine election which had been called for 25 March, 1950,—taking over in its entirety the machinery and personnel which had been set up and appointed by the Board as formerly constituted,—without additional oaths being taken by precinct officials; that the registration books were kept open on 11 March, 1950, under orders and direction of the Board as the third Saturday, and the legal requirements of challenge day were duly observed on Saturday, 18 March, 1950.

5. That in all but 8 of the 31 precincts in Randolph County the registration books purport to show what persons voted in the 1948 general election,—but in the 8 the registration books did not so show, however the poll books did. That in the checking of petition in January, 1950, the Board as then constituted had counted every petitioner registered in these 8 precincts as having voted in the 1948 general election, and, because of this, the Board, as newly constituted, ordered a recheck of the petition as to these 8 precincts, using the poll books, and re-employed Miss Iola Lowdermilk and ten of the original checkers to do the rechecking; that this rechecking was done under the direction of the Board, and under the supervision of the chairman, who although not personally present during the entire time consumed in checking, ("he was frequently present and consulted with reference to said checking"); (This is covered by assignment of error #3); that at the completion of the recheck, Miss Lowdermilk certified to the Board ("and the Board found as a fact") that the total number of signatures on the original beer and wine petition was 3,620; (The clause in parenthesis is covered by assignment of error #4); that the number of signers on said petition legally registered and who personally voted in the 1948 general election was 2,464; that the number of signatures on the petition of persons regularly registered but who had not themselves voted in the 1948 general election was 571; that 426 persons who were not registered for the 1948 general election had signed the petition; that 4 signatures were duplications; that 29 were

illegible; and that 126 signatures appearing were not counted because there was reason to believe they were not genuine.

6. That the election which had been called upon the petition presented to the Board of Elections on 19 January, 1950, and for which the advertisement was begun by the Board as then constituted and was completed by the Board as newly constituted, was held on 25 March, 1950, and every qualified voter in Randolph County had a fair and ample opportunity to register and vote in said election; that no fraud or irregularities occurred on election day; that the results of said election, which were correctly canvassed, were duly certified by the Board of Elections to the clerk of Superior Court of Randolph County on 27 March, 1950, as follows: 753 for, and 7,924 against the legal sale of wine; and 783 for, and 7,856 against the legal sale of beer.

7. That in paragraph 4 of the affidavit of J. F. Trazzare there are listed 303 names which in his opinion were written by the same person, of which number 45 were not counted as valid by the Board of Elections in passing upon the sufficiency of the petition, and the court adopts same as its finding of fact, with the exception of (35 named persons, none of whose signatures the court finds were written by the same person); (This is covered by assignment of error #5); that the names of five named persons were duplications; that the names of two others are in the same handwriting, and that another is not a registered voter.

8. (That in checking the petition and in holding the said election the Board of Elections of Randolph County acted in good faith). (This is covered by assignment of error #6).

The court held: (1) That the requirement of General Statutes 18-124 (b) that "15 per cent of the registered voters of the county that voted for Governor in the last election" shall sign the petition requesting a beer and wine election refers to the total number of votes cast for Governor in the last general election and does not necessarily mean that the persons who signed the petition must be the identical persons who cast votes for Governor in said election; (2) that the petition on which the election held on 25 March, 1950, was called, fully complied with the requirements of General Statutes 18-124; and (3) that to meet these requirements it is not necessary to count any signatures contested by the plaintiff in this action.

Also the court held: (1) That every ruling of the Board and holding upon the validity of said petition is *prima facie* correct and the burden is upon plaintiff to establish facts to the contrary; (2) that this presumption of validity is not overcome solely by evidence that certain signatures (a large majority of same being signatures of persons within the same family) are in the same handwriting; and (3) that the petition requesting the election contained 3,029 valid signatures.

And the court further held: (1) That the petition on which the election of 25 March, 1950, was called was, in all respects, legally sufficient; (2) that it was the legal duty of the Board of Elections of Randolph County to call said election upon the presentation of said petition; and (3) that said election is in all respects legal and valid.

Therefore the court held that plaintiff is not entitled to an order restraining the sheriff of Randolph County from enforcing the law prohibiting the sale of wine and beer in Randolph County after the expiration of 60 days from the date of election, and that plaintiff's application is denied.

The record on appeal shows that: "To the foregoing findings of fact and judgment, the plaintiff enters exceptions." And plaintiff appeals to the Supreme Court and assigns error.

*Ottway Burton for plaintiff, appellant.*

*Ferree & Gavin for defendants, appellees.*

WINBORNE, J. The exception in the case in hand is "to the foregoing findings of fact and judgment." This, as to findings of fact, is a broadside exception. It fails to point out and designate the particular findings of fact to which exception is taken, and it is insufficient to challenge the sufficiency of the evidence to support the findings, or any one or more of them. *Vestal v. Machine Co.,* 219 N.C. 468, 14 S.E. 2d 427.

When it is claimed that findings of fact made by the trial judge are not supported by evidence, the exceptions and assignments of error in relation thereto must specifically and distinctly point out the alleged errors. *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351, and cases cited; also *Paper Co. v. Sanitary District, ante,* 421; *Johnson v. Barham, ante,* 508.

In the absence of proper exceptions to the finding of fact on which a judgment is based, an exception to the signing of the judgment is insufficient to bring up for review the findings of fact. *Fox v. Mills,* 225 N.C. 580, 35 S.E. 2d 869; *Burnsville v. Boone, supra.*

However, in the grouped assignments of error plaintiff has set out specific portions of the findings of fact to which exceptions are there stated. But these are apparently abandoned, since they are not brought forward in the appellant's brief filed in this Court. "Exceptions in the record not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." Rule 28 of the Rules of Practice in the Supreme Court, 221 N.C. 544, p. 562.

Nevertheless, a reading of the record fails to show error in the findings of fact to which the above assignments of error relate.

The remaining portion of the exception is to the judgment, and the assignment of error based thereon. These present only the question as to whether, on the facts found, error in matters of law appears upon the face of the record. *Culbreth v. Britt Corp.,* 231 N.C. 76, 56 S.E. 2d 15; *Terry v. Coal Co.,* 231 N.C. 103, 55 S.E. 2d 926, and cases cited.

And the assignment of error as stated in the grouping of assignments of error is "to the holding of the court that the petition and election was in all respects legal and valid and that a person only has to be a registered voter of Randolph County to be a valid petitioner, and that the plaintiff has not established a *prima facie* case to entitle him to a restraining order, the plaintiff excepts, and to the judgment signed in this matter." Thus the challenge to validity of the election is expressly limited to and focused upon the point that the trial court erred in respect of the ruling as to who is a valid petitioner within the meaning of General Statutes 18-124 (b), which is subsection b of Section 1 of Chapter 1084 of 1947 Session Laws of North Carolina. This is the sole question. This statute pertains to petitions requesting that an election be held for the purpose of submitting to the voters of the county the question of whether or not wine or beer or both shall legally be sold therein, and provides that the county board of elections, "upon presentation to it of a petition signed by fifteen per cent (15%) of the registered voters of the county that voted for governor in the last general election requesting" such an election, shall call it for the purposes above stated.

The court below held that the words "15 per cent of the registered voters of the county that voted for governor in the last general election," as used in the statute refers to the total number of votes cast for Governor in the last general election, and not necessarily the identical persons who cast votes for Governor in said election. This appears to be the fair and reasonable meaning of the statute.

Since the election laws of this State provide for a secret ballot, it would be impossible for a county board of elections to determine how or whether any particular voter voted for Governor in the last general election. Hence, it is inconceivable that the General Assembly intended to do a vain thing.

Indeed, the findings of fact hereinabove stated show not only that the number of signers on the petition in question who were legally registered, but that the number of the signers who personally voted in the 1948 general election exceeded fifteen per cent of the number of votes then cast for Governor.

It is noted that appellant debates, in his brief, various other questions of law in respect of matters of law in the judgment from which appeal is taken. And while not presented by the assignments of error, a reading

of the facts, in the light of pertinent statutes and decisions of this Court fails to show error upon the face of the record.

Attention is directed to the fact that in brief filed here, appellant groups on one page all cases cited, and in the text of the brief does not give the volume and page of any case cited, but follows each with the word *"supra,"* thereby necessitating a checking with the list of grouped cases to find where any case is reported. This is not a compliance with Rule 28 of the Rules of Practice in the Supreme Court. 221 N.C. 544, at page 562.

Upon full consideration of the case as presented, error is not made to appear in the judgment from which appeal is taken.

Affirmed.