G. N. CHILDRESS, TRADING AND DOING BUSINESS AS G. N. CHILDRESS TRANSPORTATION COMPANY, v. JOHNSON MOTOR LINES, INC.

(Filed 7 May, 1952.)

**1. Courts § 15—**

In an action instituted in this State involving a collision in the State of Virginia, the substantive law of Virginia applies while the adjective law of North Carolina, including the rules of evidence and the *quantum* of proof necessary to make out a *prima facie* case, controls.

**2. Automobiles §§ 13, 18h (2)—Evidence held sufficient for jury on question of defendant's negligence in invading traffic lane reserved exclusively for vehicles traveling in the opposite direction.**

The accident in suit took place on a three lane highway in the State of Virginia between plaintiff's vehicle traveling north and defendant's vehicle traveling south. At the place of the collision the highway was divided into three lanes and marked so that only the east lane was allotted to vehicles traveling north while the west lane and the center lane were reserved for vehicles traveling south. Plaintiff's evidence, considered in the light most favorable to him, was sufficient to sustain the inference that plaintiff's vehicle was being driven in its right hand lane and that defendant's vehicle was driven out of its right hand lane into the center lane in order to pass a car in front of it, but that it was driven too far to the left so that it protruded into plaintiff's traffic lane and collided with the left side of plaintiff's vehicle opposite the cab. *Held:* The evidence was sufficient to be submitted to the jury on the question of defendant's negligence *per se* in the violation of the statutes of the State of Virginia regulating travel on three lane highways, and defendant's motions to nonsuit were properly overruled.

**3. Automobiles § 18i—**

It is error for the court to read to the jury the reckless driving statute in force in the state in which the accident occurred without charging the jury in regard to the maximum speeds referred to in the statute, and when all the evidence tends to show that defendant's vehicle was not exceeding the speed limit of that state, although its speed was in excess of the maximum allowable speed for such vehicles in this State, the error must be held prejudicial.

**4. Trial § 31b—**

It is error for the court to charge the jury in regard to abstract propositions of law which are not pertinent to the facts in evidence.

**5. Automobiles § 18i—**

It is error for the court to instruct the jury in regard to safety statutes relating to principles of law which are not based upon or pertinent to any facts in evidence.

**6. Injunctions § 4f—**

While the courts of this State will not seek to restrain the prosecution of an action in the court of another state by order directed to such court or any of its officers, our courts may restrain a party from prosecuting an action in another state when it is made to appear that such action will unduly and inequitably interfere with the progress of litigation here or with the establishment of rights properly justiciable in our courts, particularly where the parties are residents of this State.

**7. Same—**

Subsequent to the institution of an action here involving the rights of the parties growing out of a collision in another state, defendant in the action here instituted suit against plaintiff in a court of such other state to determine the liabilities of the parties arising out of the same collision. *Held:* Our State court, upon supporting findings, properly issued an order restraining defendant from prosecuting such other suit.

**8. Appeal and Error § 6c (2)—**

An exception to the signing of an order is insufficient to bring up for review the findings of fact upon which the order is predicated, and the order will be upheld when it is supported by the findings.

APPEAL by defendant from *Burgwyn, Special Judge,* and a jury, at November Special Term, 1951, of LEE.

Civil action to recover for damage to property resulting from a collision of two tractor-trailer units, in which the defendant pleads contributory negligence and also sets up a counterclaim.

The plaintiff, a resident of Lee County, North Carolina, is engaged in operating a fleet of large tractor-trailer units for the transportation of freight for hire. The defendant, a corporation, with office and principal place of business in the City of Charlotte, is engaged in a similar business.

The collision occurred on U. S. Highway No. 1 about a mile and a half north of Dinwiddie Courthouse, Virginia. The two vehicles were meet-

ing and were about to pass. The plaintiff's tractor-trailer unit was traveling northward, the defendant's southward.

As the two vehicles approached each other, the defendant's tractor-trailer, which had been following behind a passenger type automobile, pulled out to its left to overtake and pass the automobile, but before completing the passing movement the collision occurred. Both vehicles were badly wrecked. They turned over, immediately caught fire, and became enveloped in flames. Both drivers, and also the defendant's relief driver, died almost instantly, and both tractor-trailer units and their cargoes were completely demolished and burned up. This action relates only to issues of property damage.

The defendant's motion for judgment as of nonsuit, first made when the plaintiff rested his case and renewed at the conclusion of all the evidence, was overruled, after which the issues of negligence, contributory negligence, and damages arising upon the pleadings were submitted to the jury. The issues of negligence and contributory negligence were answered in favor of the plaintiff and the jury awarded the plaintiff damages of $11,925 for the tractor-trailer, and $24,439.78 for loss of the cargo. Thereupon judgment was entered for the plaintiff in the sum of $36,364.78.

From judgment so entered, the defendant appealed, assigning errors.

*Gavin, Jackson & Gavin and Pittman & Staton for plaintiff, appellee.*
*Smith, Leach & Anderson, W. M. Seymour, and J. G. Edwards for defendant, appellant.*

JOHNSON, J. The defendant places chief stress upon exceptions which relate (1) to the refusal of the trial court to allow the motion for judgment as of nonsuit, (2) to the charge of the court, and (3) the order of injunction restraining the prosecution of an action in Virginia involving the same subject matter.

It is admitted that the collision occurred in Virginia. Therefore the questions of liability for negligence must be determined by the law of that State. The rule in such cases is that matters of substantive law are controlled by the law of the place—the *lex loci,* whereas matters of procedure are controlled by the law of the forum—the *lex fori.* Thus the methods by which the parties are required to prove their allegations, such as the rules of evidence and the *quantum* of proofs necessary to make out a *prima facie* case, are matters of procedure governed by the law of the place of trial. *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11. Therefore, the question whether the evidence offered was sufficient to carry the case to the jury over the defendant's motion for judgment as of nonsuit is to be determined under application of the principles of law prevailing in

this jurisdiction. *Clodfelter v. Wells, supra; Harrison v. Atlantic Coast Line R. Co.,* 168 N.C. 382, 84 S.E. 519.

1. *The refusal to nonsuit.*—The controlling background facts are these: The highway is straight for a considerable distance both north and south of the scene of the collision, but is over rolling country with crests and hills. The highway runs approximately north and south. It is 30 feet wide, paved with black asphalt materials, and divided into three traffic lanes. South of the point of collision these lanes are separated and marked by broken white lines, each lane being about ten feet wide. Beginning at a point about 235 feet south of the point of collision, the westernmost traffic lane (the one on the extreme left looking north) is separated from the middle lane by a solid white line and a broken white line, constituting a double line. The solid line runs parallel with the broken white line northwardly for a distance of about 100 feet, at which point the solid line runs diagonally to the east and north across to the easternmost and outside traffic lane (looking north), continuing in a solid white line from the point of collision up to the crest of a hill north of the scene of the collision. This solid line is east (to the right looking north) of the broken white line which parallels the solid line from the point where the solid line begins to run diagonally across the highway and until the solid white line reaches the easternmost traffic lane. After the solid line reaches the easternmost traffic lane, it is paralleled by another solid white line from that point up to the crest of the hill north of the scene of the collision.

In force at the time of the collision were these pertinent rules of the road, as prescribed by the Code of Virginia, 1950 (Michie):

"46-222. SPECIAL REGULATIONS APPLICABLE ON STREETS AND HIGHWAYS LANED FOR TRAFFIC.—Wherever any highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

"(1). A vehicle shall normally be driven in the lane nearest the right-hand edge or curb of the highway when such lane is available for travel except when overtaking another vehicle or in preparation for a left turn or as permitted in paragraph (4) of this section;

"(2) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety;

"(3) Upon a highway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle or in preparation for a left turn or unless such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted or marked to give notice of such allocation;

"(4) (not applicable to instant case).

"(5) Wherever a highway is marked with double traffic lines consisting of a solid line immediately adjacent to a broken line, no vehicle shall be driven to the left of such solid line if the solid line is on the right of the broken line;

"(6) Wherever a highway is marked with double traffic lines consisting of two immediately adjacent solid lines, no vehicle shall be driven to the left of such lines."

Therefore, according to the motor vehicle laws of Virginia and the manner in which the highway admittedly was marked and laned for traffic at the scene of the collision, the easternmost lane was reserved for use of northbound traffic and the center and westernmost lanes were reserved for the use of southbound traffic only.

Thus at the point of collision it was unlawful, and therefore negligence *per se* (*Crist v. Fitzgerald,* 189 Va. 109, 52 S.E. 2d 145), for the driver of a northbound vehicle to cross to his left over the solid line, or for the driver of a northbound vehicle to travel into and upon the center traffic lane; whereas, for some distance north and south of the point of collision it was lawful and permissible for the driver of a southbound vehicle, in the exercise of due care, to travel into and upon the center traffic lane for the purpose of overtaking and passing a southbound vehicle traveling in the westernmost lane.

The plaintiff's tractor-trailer unit was proceeding north. The defendant's unit, going south, was overtaking and attempting to pass to the left of a Chevrolet automobile which was proceeding southwardly in the same direction. The collision occurred before the passing movement was completed. All three vehicles were involved in the collision.

The plaintiff alleges and contends that his tractor-trailer was where it rightly belonged—within the easternmost traffic lane, reserved for northbound traffic, and that the driver of defendant's vehicle, in overtaking and pulling out to pass the Chevrolet automobile, negligently swung too far to his left into the easternmost traffic lane and struck the plaintiff's tractor-trailer, thus causing the collision in suit.

The defendant, on the other hand, alleges and contends that its driver in so passing the Chevrolet automobile remained within the confines of the middle lane which at that point the defendant's driver had the right to use for passing purposes, and that the plaintiff's driver suddenly swerved across the forbidden solid line to his left and struck the defendant's tractor-trailer unit over in the middle lane.

An examination of the record discloses that the evidence is sharply conflicting on the crucial question of whether the collision occurred inside the easternmost lane reserved for northbound traffic. However, as bear-

ing on the question of nonsuit, these phases of the evidence, tending to support the plaintiff's theory of the case, come into focus:

(1) The witness J. S. Baker, who was driving another tractor-trailer unit belonging to the plaintiff, testified that at the time of the collision he was just ahead of the plaintiff's vehicle that was in the collision. He said he left Sanford the morning of the collision with Neville, the driver of the tractor involved in the collision; that after various stops along the way they reached Dinwiddie, Virginia, in the late afternoon; that he got ahead of Neville coming out of Dinwiddie, and drove along northwardly therefrom at a speed of from 40 to 45 miles per hour; that Neville did not try to pass him, but drove along, keeping behind "a good 300 feet or more," to the scene of the collision. He said: "At various times I was looking in the mirror at what was behind me . . . Neville was traveling directly behind me . . . in the northbound lane of traffic. . . . I could see his lights in my rear-view mirror. . . . I was as far on the right-hand side as I could get and his right-hand light was in the view of my mirror, where I could see in the mirror." The witness Baker further stated that at a point about a mile and a half north of Dinwiddie he met the defendant's tractor-trailer unit. It was immediately behind a Chevrolet automobile. He said: "At the time I met the Johnson Motor Lines truck, Mr. Neville was right behind me." The defendant's truck "was traveling a very close distance, . . . 12 or 15 feet from . . . the Chevrolet car. . . . As I got past the car and truck coming over the hill, the Johnson truck swings to the middle lane in order to pass the car. . . . That's when the wreck taken place. . . . I saw the truck when it pulled out to pass the automobile. . . . It made a left turn to the middle of the road. . . . He was going toward the middle lane of the road going out from behind the automobile in order to get in the middle lane to pass." At that time he said Neville was traveling in the "northbound lane of traffic directly behind me. I could see his lights in my rear-view mirror. . . . I was as far on the right-hand side as I could get and his right-hand light was in the view of my mirror, where I could see in the mirror. . . . I looked in the mirror and seen the truck and when I looked back to see if he was doing all right, I looked in the mirror and the thing was on fire. . . . I can't say I seen anything that happened. I was looking in my mirror when the fire went up. I couldn't see the trucks when they went together. . . . I could not completely see over . . . the hill where the fire or collision took place,—riding in a truck like this I could not completely see across the hill and down to the bottom on the other side. . . . I could see the truck. I could not see down to the ground, but I could see any moving vehicle that was traveling in that lane in the mirror. . . . When I saw the flash of fire, I wasn't exactly to the bottom of that hill north of the accident; I was nearing the bottom; I was going down the

slope of the hill, which is not too much of a grade. . . ." The last mile or mile and a half "he (Neville) stayed right directly behind me and I was on my right-hand side of the road all the time. . . . Neville turned his marker lights on the truck after we left the store at Dinwiddie. The only thing I was going by was the marker lights on the trailer and the bumper lights on each one of his headlights."

(2) Jesse Holland, the driver of another tractor-trailer unit belonging to the plaintiff Childress, testified he was following along behind the Neville unit that was in the collision. He said: "As we left . . . Dinwiddie, I was just a good traveling distance behind the nearest truck. . . . Both of the trucks were in my view. As I approached the point of the accident I could see the truck in front of me. He was on his right-hand side of the road in the right-hand lane. . . . (Two cars were between the witness and the Neville unit which was in the collision.) I was keeping a good safe distance behind these cars, at least 400 or 500 feet, . . . No, I did not see the accident. . . . I just saw the flash of the fire. At the time I saw the flash my truck was right in a hollow right back of him. Immediately before the flash, "I could see better than the top of his (Neville's) trailer, half way." It was "on the right-hand side, the right-hand lane. . . . It seemed to raise up and fall over kind of off the road, bias the road, you might say. . . . No it wasn't dark enough to turn on the headlights. We had on clearance lights. I could see the clearance lights on the trailer. From the top to about half way down the body. . . ."

(3) There was evidence tending to show that the points of impact on the two tractors were as follows: The left-hand front fender and wheel of the defendant's tractor made contact with the "left corner of the cab" of the plaintiff's tractor.

(4) The Chevrolet car which the defendant's driver was attempting to pass appears to have been hit on the left side, opposite the rear wheel and door.

(5) There was evidence that the defendant's driver was about the defendant's business at the time of the collision.

This evidence when considered with the rest of the evidence, in its light most favorable to the plaintiff, as is the rule on motion to nonsuit (*Donlop v. Snyder*, 234 N.C. 627, 68 S.E. 2d 316), was sufficient to sustain the inference that the plaintiff's vehicle was in the easternmost traffic lane where it rightly belonged at the time of the collision and that plaintiff's loss and damage was proximately caused by the negligence of the driver of the defendant's tractor in swinging too far to his left in overtaking and attempting to pass the Chevrolet car. See *Robinson v. Transportation Co.*, 214 N.C. 489, 199 S.E. 725; *Gladden v. Setzer*, 230 N.C. 269, 52 S.E. 2d 804; *Wallace v. Longest*, 226 N.C. 161, 37 S.E. 2d 112; 61 C.J.S., Motor Vehicles, Sec. 518.

It follows, then, that the motion for judgment as of nonsuit was properly overruled.

2. *The Charge of the Court.*—The defendant urges that the court erred in failing to declare and explain the statutes of Virginia regulating the speed of motor trucks on public highways as required by the provisions of G.S. 1-180 as amended. Here the defendant insists that the speed of its tractor-trailer was a substantive phase of the case on which it was the duty of the trial court to charge fully and completely.

It is specifically alleged in the complaint that the defendant "operated its truck at a speed greater than that allowed by law." And the witness Torain (who was in a car in front of the Chevrolet at the time of the collision) testified that the defendant's vehicle followed along behind him from Petersburg to the scene of the collision, a distance of 11 or 12 miles. The plaintiff's counsel on cross-examination further drew from the witness Torain these statements: "From Petersburg to the place of collision, I was driving between 40 and 50 miles an hour, pretty regular speed. I passed the Johnson truck in the city limits of Petersburg coming out. . . . He followed me all the way to the scene of the accident. I ran in behind the Chevrolet and passed, and then the Chevrolet was between me and the Johnson truck. He (the Johnson driver) kept up with me. . . ."

The trial court read to the jury the Virginia statute on reckless driving (46-208, Code of Virginia, 1950 (Michie)), which is as follows: "Irrespective of the maximum speeds herein provided, any person who drives a vehicle upon a highway recklessly or at a speed or in a manner so as to endanger life, limb or property of any person shall be guilty of reckless driving; . . ."

The Virginia statute which prescribes speed limits, 46-212 (3), Code of Virginia, 1950 (Michie), provides (subject to the reckless driving statute—46-208), for a maximum allowable speed of 50 miles per hour for trucks.

After reading the statute on reckless driving (46-208), the court failed to tell the jury what the maximum speeds referred to in the statute were. The court neither read to the jury the Virginia speed statute, 46-212 (3), nor explained the law concerning the maximum allowable speed for trucks as fixed by the statute. This was error for failure to comply with the provisions of G.S. 1-180 as amended. See *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212; *Lewis v. Watson,* 229 N.C. 20, 47 S.E. 2d 484.

That this error was prejudicial to the defendant seems all the more likely in view of the fact that the maximum allowable speed of the defendant's tractor-trailer under the North Carolina law is 45 miles per hour (G.S. 20-141 as rewritten by Chapter 1067, Session Laws of 1947), and until 1947 the *prima facie* limit was 35 miles per hour. (G.S. 20-141).

In connection with another group of exceptions the defendant urges that the court below erred in reading to the jury a number of highway safety statutes which had no application to the evidence in the case. The challenged statutes were read to the jury as being "the law in the State of Virginia in respect to the matters we are now considering. . . ."

It is established by our decisions that an instruction about a material matter not based on sufficient evidence is erroneous. *Dorsey v. Corbett,* 190 N.C. 783, 130 S.E. 842, and cases there cited. See also *Maddox v. Brown,* 232 N.C. 542, 61 S.E. 2d 613.

And it is an established rule of trial procedure with us that an abstract proposition of law not pointing to the facts of the case at hand and not pertinent thereto should not be given to the jury. *Cashwell v. Bottling Works,* 174 N.C. 324, 93 S.E. 901; *Farrow v. White,* 212 N.C. 376, 193 S.E. 386; *Williams v. Hunt,* 214 N.C. 572, 199 S.E. 923.

Here the defendant challenges the action of the court in reading to the jury these portions of 46-209 of the Virginia Code of 1950 (Michie), which provide that "A person shall be guilty of reckless driving who shall: (1) Drive a vehicle . . . with inadequate or improperly adjusted brakes. . . . (2) While driving a vehicle, overtake and pass another vehicle proceeding in the same direction, upon or approaching a crest or grade or upon or approaching a curve in the highway, where the driver's view along the highway is obstructed; . . . (3) Pass or attempt to pass two other vehicles abreast moving in the same direction. . . . (4) Overtake or pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing or at any intersection of highways, or while pedestrians are passing or about to pass in front of such vehicle unless permitted to do so by traffic light or police officer."

A perusal of the record fails to disclose any evidence whatsoever tending to show either (1) that the defendant's truck was driven with inadequate or improperly adjusted brakes, (2) that his driver's view was obstructed while attempting to pass the Chevrolet automobile, (3) that the defendant's driver was attempting to pass two other vehicles abreast moving in the same direction, or (4) that the collision occurred at or near a grade crossing, intersection, or that pedestrians were affected by the movement of the vehicles. It follows, then, that neither of these statutes was pertinent to any phase of the evidence. See *Williams v. Hunt, supra; Maddox v. Brown, supra.*

The record discloses that the dominant theory of the trial below revolved around application of the statute which prescribes regulations in respect to driving on highways which have been divided into clearly marked lanes for traffic (46-222). This being so, the prejudicial character of error here pointed out is made more manifest by reason of the

apparent conflict between this statute and the statute prohibiting overtaking and passing when the driver's view is obstructed (46-209 (2)).

3. *The Order of Injunction.*—After the commencement of this action, the defendant instituted an action against the plaintiff in Virginia involving the same subject matter. Thereafter, an order was entered in the instant action permanently restraining the defendant from prosecuting the Virginia action. The defendant's exception to the order has been brought forward on this appeal. However, the exception seems to be without merit.

It is fundamental that a court of one state may not restrain the prosecution of an action in a court of another state by order or decree directed to the court or any of its officers. 21 C.J.S., Courts, Sec. 554.

Nevertheless, it is well established that "a court . . . which has acquired jurisdiction of the parties, has power, on proper cause shown, to enjoin them from proceeding with an action in another state . . ., particularly where such parties are citizens or residents of the state, or with respect to a controversy between the same parties of which it obtained jurisdiction prior to the foreign court." 43 C.J.S., Injunctions, Sec. 49, p. 499. See also 21 C.J.S., Courts, Sec. 554; 28 Am. Jur., Injunctions, Secs. 204 and 205.

However, the rule is that this power of the court should be exercised sparingly, and only where "a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice." 43 C.J.S., Injunctions, Sec. 49. See also *Wierse v. Thomas,* 145 N.C. 261, 59 S.E. 58; *Boyd v. Hawkins,* 17 N.C. 329, p. 336; Anno.: 6 A.L.R. 2d 896.

In accordance with these principles, an action or proceeding in another state ordinarily may be enjoined where it is made to appear that its prosecution will interfere unduly and inequitably with the progress of local litigation or with the establishment of rights properly justiciable in the local court; or that it is unduly annoying, vexatious, and harassing to the complainant, and reasonably calculated to subject him to oppression or irreparable injury. See 43 C.J.S., Injunctions, Sec. 49, p. 499; 28 Am. Jur., Injunctions, Sec. 211.

The court below, after hearing the affidavits of each side, found facts and entered an order permanently enjoining the prosecution of the Virginia action. It would serve no useful purpose to recapitulate here the facts found by the court. They are set out in meticulous detail in the order. Under application of the controlling rules of equity jurisprudence, the facts found by the court are sufficient to support the order of injunction.

The defendant's only exception is to the signing of the order. This is insufficient to bring up for review the findings of fact. The exception challenges only the sufficiency of the findings to support the order.

*Weaver v. Morgan,* 232 N.C. 642, 61 S.E. 2d 916; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351; *Thompson v. Thompson, ante,* 416. It follows then that since the order is supported by the findings, the order of injunction will be upheld. The case of *Evans v. Morrow,* 234 N.C. 600, 68 S.E. 2d 258, cited by the defendant, is distinguishable. There, among other factual differences, the North Carolina court had not acquired jurisdiction of the action prior to the commencement of the out-of-state proceeding, as in the instant case.

The errors herein pointed out, when considered in the aggregate, necessitate a new trial, and it is so ordered. This being so, it is not necessary to discuss the rest of the defendant's assignments of error.

New trial.