JOHN E. McCOMBS, Administrator of the Estate of JOE WASHINGTON SCOTT, JR., v. McLEAN TRUCKING COMPANY and WILLIAM LESTER OLIVER

AND

DAVID V. MILLER, Doing Business as INTERSTATE MOTOR LINES, v. McLEAN TRUCKING COMPANY and WILLIAM LESTER OLIVER.

(Filed 10 June, 1960.)

**1. Courts § 20—**

In action based on a collision in another state, the law of the road of such other state governs the substantive rights, while matters of procedure, including the rules of evidence and the sufficiency of the evidence to take the case to the jury, are to be determined by the laws of this State.

**2. Trial § 22a—**

On motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, giving him the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom, and defendant's evidence is not to be considered except in so far as it is not in conflict with that of plaintiff, but tends to explain or make clear plaintiff's evidence.

**3. Automobiles § 15—**

Under the laws of the State of Virginia, governing these actions, the drivers of vehicles proceeding in opposite directions are required to keep to the right side of the highway, each giving the other, as nearly as possible, one-half of the main traveled portion of the highway, and each driver has the right to assume that the other will obey the law, and it is only when he apprehends that the other is going to fail to do so that he should take other action in an attempt to avoid collision.

**4. Automobiles § 41c— Whether defendant driver was justified in turning left across the highway in effort to avoid colliding with approaching vehicle held for jury.**

Defendants' evidence, together with the physical facts at the scene of the accident, tended to show that as the respective vehicles of the parties, traveling in opposite directions, approached each other on the highway, plaintiffs' vehicle began to veer in a direct line toward the center of the highway and toward defendants' vehicle, that defendant driver dimmed his lights, received no response, and, when the vehicles were some thirty feet away, turned sharply to his left across the center line of the highway in an effort to avoid collision, but that the right side of defendants' tractor collided with the left front of plaintiffs' tractor. *Held:* Defendants' motions for nonsuit and a directed verdict in their favor were properly denied, it being for the jury to determine upon the evidence whether defendant driver was justified under the circumstances in turning to his left across the center line of the highway.

**5. Trial § 7—**

Any impropriety in permitting counsel to read portions of irrelevant statutes to the jury is cured by the action of the court in instructing

the jury to answer the issues submitted under instructions of law by the court without reference to the irrelevant statutes.

**6. Automobiles § 39a:    Evidence § 16:    Appeal and Error § 41—**

Toy models of vehicles, while they may be competent for the purpose of permitting a witness to explain his testimony, are not competent as substantive evidence and, therefore, the exclusion of the testimony of a witness in respect to the use of such toy models cannot be held for error when the record fails to disclose on what ground the use of the models was excluded.

**7. Appeal and Error § 42—**

While it is error for the court to charge law which is inapplicable to the facts in evidence, the charge of the court in this case, involving voluminous pleadings and evidence, *is held* not to contain prejudicial error in this respect.

Appeal by defendants from *Thompson, S. J.,* at June 22, 1959 Civil Term, of Guilford (High Point Division), argued as No. 600 at Fall Term 1959, now appearing on docket as No. 594 at Spring Term 1960.

Two civil actions arising out of a collision between two tractor-trailer units.

In the first case John E. McCombs, as Administrator of the Joe Washington Scott, Jr., estate, seeks recovery for the alleged wrongful death of his intestate.

In the second, David V. Miller seeks recovery of property damage to his vehicle.

Both cases are predicated upon the alleged negligence of the defendant William Lester Oliver, hereinafter referred to as Oliver, who operated the 1952 GMC tractor-trailer as agent for the defendant McLean Trucking Company, hereinafter referred to as McLean. In both cases the defendants deny negligence on their part and plead contributory negligence of plaintiff's intestate by way of defense.

In the action brought by David V. Miller for property damage defendant Oliver and defendant McLean Trucking Company enter counterclaims alleging personal injuries and property damage, respectively, resulting from the alleged negligence of plaintiff's intestate. In the wrongful death action brought by John E. McCombs both defendants submitted to a voluntary nonsuit of their counterclaims.

Considering the admitted allegations of the plaintiff and the evidence offered at the trial taken in the light most favorable to the plaintiff, it tends to show: The collision occurred about five o'clock A. M., 27 July 1958, in Halifax County, Virginia, on Virginia Highway No. 304, near the town of South Boston. The plaintiff's intes-

tate was driving a 1955 International tractor, pulling a Great Dane trailer, which was owned by the plaintiff David V. Miller, doing business as Interstate Motor Lines, hereinafter referred to as Interstate. At the time of the collision the plaintiff's intestate was the agent of Miller and acting within the scope of his employment. The defendant Oliver was driving a 1952 GMC-tractor, pulling a Fruehauf-Carter trailer, and was proceeding north on highway No. 304, acting within the course and scope of his employment as the employee of McLean.

Plaintiff's intestate was returning to High Point, North Carolina, from New York, N. Y., with a cargo of used furniture. Testimony elicited at the trial indicated that the McLean trailer was carrying a load of cotton cloth and chemicals weighing 32,000 pounds, and the McLean tractor-trailer vehicle weighed 19,000 pounds. The Miller tractor-trailor vehicle weighed approximately 13,700 pounds, and was loaded with furniture, — "a bulky commodity, considerably lighter * * * 15% lighter than a load of textiles would be."

The defendant Oliver had been awakened from his sleep at midnight some five hours before the collision, and had had only three and a half or four hours of sleep that night prior to the wreck. Oliver's co-driver, Lee, was asleep at the time of the collision.

The collision occurred in open country in a valley between two hills, — one hill to the north and the other to the south of the valley which is "basically level." The highway is constructed on a fill some 10 to 12 feet high. The highway is paved with asphalt, and is 20 feet in width. The point of collision is just north of the Wolf Creek Bridge. The wrecked vehicles were found some 100 feet north of the bridge. There are guard rails on both sides of the highway north of the bridge. The guard rails ran from the bridge north for some distance past the wreckage. South of the wreck scene there were broken white center lines painted on the surface of the highway; but at or near the wreck scene there began a solid white line on the east side of the center of the highway. The defendant Oliver testified: "I testified that the collision did occur in the general area where the double white lines began as you proceed north, as best I recall."

When the vehicles came to rest after the collision the McLean trailer was situated diagonally across the entire highway with its front end on the west side as far as the guard rail with more of its equipment on the west side than on the east. Broken tire (skid) marks were found leading up to the left rear wheels of the McLean trailer. These skid marks pointed diagonally toward the center of

the highway looking north and reached the center line but did not cross over into the west lane but got closer to the white center line as they proceeded north. The length of the skid marks was about the length of the bridge, 22 feet 4 inches. The McLean tractor was off the highway on the west side, — the collision having severed the tractor from its trailer. The McLean tractor was the northern-most of the four units and its separated trailer was the southern-most of the four units of equipment.

The Miller trailer was across the highway facing west with its front end near the center line and its rear end off the edge of the pavement to the east of the highway near the guard rail of the bridge. It was between the McLean trailer and tractor. The Miller tractor was almost completely demolished under the front end and to the north of the McLean tractor. It was in the west lane of traffic except for a small protrusion of its left rear corner into the east lane, and was pointed south or southwest.

The McLean tractor received its principal damage from the impact on the right side into the door area and sleeper compartment located to the rear of the door area. The left side of the McLean tractor was undamaged.

The principal damage to the Miller tractor from the impact of the collision apparently was to its left front. The wreckage caught fire almost immediately after the collision.

The body of plaintiff's intestate was found in the west lane badly burned, and decomposed under the wreckage and debris.

On the other hand, defendants aver in their answers, and upon the trial in Superior Court Oliver testified that as the oncoming tractor and trailer neared it began to veer in direct line toward the center of the highway and the McLean tractor and trailer; that he dimmed his lights, but received no response, and when the Interstate equipment was thirty feet away, having no other place to go, he turned his, the McLean's equipment, sharply to the left, across the center line at the moment of impact; that he acted in an emergency — created by the oncoming vehicle.

At the close of plaintiff's evidence and again at the close of all the evidence the defendants moved for judgment as of nonsuit. Motion denied.

The McCombs case was submitted to the jury upon these four issues, which the jury answered as indicated.

I. Was plaintiff's intestate, Joe Washington Scott, Jr., killed by the negligence of the defendants, as alleged in the complaint? Answer: Yes.

II. If so, did Joe Washington Scott, Jr., by his own negligence, contribute to his death? Answer: No.

III. What amount, if any, is the plaintiff entitled to recover by reason of the death of Joe Washington Scott, Jr.? Answer: $27,000.00.

IV. In what manner shall the sum, if any, set forth in answer to issue No. III be divided between the wife and children of Joe Washington Scott, Jr.?

| | |
|---|---|
| Norma Jean Scott, wife — | $2,000.00 |
| Barbara Louise Scott, daughter — | $5,000.00 |
| Robert Carl Scott, son — | $5,000.00 |
| Karen Ann Scott, daughter — | $5,000.00 |
| Jack Dempsey Scott, son — | $5,000.00 |
| Carolyn Marie Scott, daughter — | $5,000.00 |

In the Miller case the jury answered these issues as indicated:

I. Was the plaintiff's equipment damaged by the negligence of the defendants, as alleged in the complaint? Answer: Yes.

II. If so, did the plaintiff's agent and employee Joe Washington Scott, Jr., by his negligence, contribute to the plaintiff's damage? Answer: No.

III. What amount, if any, is the plaintiff entitled to recover of the defendants? Answer: $4,000.00.

Judgment was entered in accordance therewith in favor of plaintiffs. The defendants except and appeal to Supreme Court, and assign error.

*Smith, Moore, Smith, Schell & Hunter, Haworth, Riggs & Kuhn for plaintiffs appellees.*
*Richmond Rucker, Spry & Hamrick for defendants, appellants.*

WINBORNE, C. J. Appellants present on this appeal six questions for decision. We treat them in the order in which they are presented. The first challenges the ruling of the trial judge in denying defendants' motions for judgments as of nonsuit renewed at the close of all the evidence, G.S. 1-183.

It being admitted that the collision involved in this action occurred in Virginia, "the question of liability for negligence must be determined by the law of that State. The rule in such cases is that matters of substantive law are controlled by the law of the place— the *lex loci*, whereas matters of procedure are controlled by the law of the forum — the *lex fori*. Thus the methods by which the parties are required to prove their allegations, such as the rule of evidence, and the quan-

tum of proofs necessary to make out a *prima facie* case are matters of procedure governed by the law of the place of trial * * * Therefore the question whether the evidence offered was sufficient to carry the case to the jury over defendants' motion for judgment as of nonsuit is to be determined under application of principles of law prevailing in this jurisdiction." So wrote *Johnson, J.,* for the Court in *Childress v. Motor Lines,* 235 N.C. 522, 70 S.E. 2d 558. See also *Harrison v. ACL R. Co.,* 168 N.C. 382, 84 S.E. 519; *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11.

In this State on a motion to nonsuit under provisions of G.S. 1-183, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. Indeed in considering such motion "the defendant's evidence, unless favorable to the plaintiff is not to be taken into consideration except when not in conflict with plaintiff's evidence, it may be used to explain or make clear that which has been offered by plaintiff," *Stacy, C. J.,* in *Harrison v. R.R.,* 194 N.C. 656, 140 S.E. 598, citing cases. See also *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543.

Therefore, taking the evidence offered by the plaintiffs, in the main predicated on physical facts, upon which they rely, (*Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88, and cases cited), and so much of the defendants' evidence as is favorable to the plaintiffs, or tends to explain and make clear that which has been offered by the plaintiffs, in the light most favorable to plaintiffs, this Court is of opinion, and holds that there is sufficient evidence to take the case to the jury on the issue of negligence of defendant Oliver, imputed to defendant McLean.

And it is appropriate to note that the General Assembly of Virginia declares in respect to rules of the road, Code of Virginia, Chap. 46.1-207, "drivers of vehicles proceeding in opposite direction shall pass each other to the right, each giving to the other, as nearly as possible, one-half of the main traveled portion of the roadway."

And while the driver of an automobile along a public highway, who sees another automobile approaching on the wrong side of the road, has the right to assume that the driver of such vehicle will observe the law and seasonably move over to his right side so as to pass safely, and further has a right to this presumption until he sees that such driver is not going to turn to his right side, it then becomes his duty to exercise ordinary care to avoid a collision. *Johnson v. Kellam,* 162 Va. 757, 175 S.E. 634.

And in this State the holding of this Court in that respect is epito-

mized in headnote in *Boyd v. Harper*, 250 N.C. 334, 108 S.E. 2d 598, reading as follows: "The failure of a motorist to keep his car on his right side of the highway in passing a vehicle traveling in the opposite direction is negligence *per se,* and whether such negligence is a proximate cause of a collision is ordinarily for the jury to determine." G. S. 20-146 and G.S. 20-148.

The second clause of the first question is without merit. For reason stated hereinabove in respect to the question as to nonsuit, a directed verdict would have been error. See McIntosh N.C.P. & P., Vol. 2, Sec. 1516, pages 52-53.

The third question relates to the action of the Court in overruling defendants' objection to plaintiffs' counsel in argument to jury, reading that portion of G.S. 97-41 which provides: "In all other cases the total compensation paid including the funeral benefits, shall not exceed ten thousand dollars," and the statement of counsel as to the amount of the award to which dependents of intestate are entitled.

The record in this respect shows that during the argument to the jury counsel for defendant read portions of G.S. 97-10 concluding with comment "that under those circumstances it was unlikely that the widow and children of deceased would be given any part of the recovery." Then counsel for plaintiffs, in his argument to jury read the portion to which reference is first above quoted. And the counsel for plaintiffs contends that what he read was invited by the remarks of counsel for defendant so related. Be that as it may, it appears that the trial judge in his charge to the jury laid the matter to rest in this manner: "* * * Now, none of the issues to be answered by you in this cause have any reference to that statute, and you therefore will not be concerned by that aspect of the case in any manner whatsoever, but you will answer these issues presented to you as you find the facts to be under the instructions of law to be given to you by the court without regard whatever to the situation that obtains in these actions by virtue of the statute and by virtue of the allegations with reference thereto, that being a matter with which you are not concerned and that your issues will not in any manner affect or reflect when you answer the issues of fact in this cause." And the record does not show that anybody objected.

The fourth relates to the exclusion of testimony of defendant Oliver in respect to use of toy vehicles to show relative locations of vehicles upon the highway. In Stanbury's North Carolina Evidence, Sec. 34, it is stated that "The North Carolina Court has often said that materials of this sort are not evidence, or are not substantive evidence, and that they can be used only to 'illustrate' or 'explain' the testi-

mony of a witness." The record fails to disclose on what ground the use of the material was excluded. It will, therefore, be assumed that the court had a valid reason. In any event it does not appear that defendants have been prejudiced by the ruling of the court.

The fifth and sixth questions purport to point to the reading and summarizing by the court statutory provisions as to rules of the road as inapplicable to the facts of the case at bar, and as not supported by the evidence.

In this connection it is worthy of note that in a record of more than sixty pages of pleadings and more than 100 pages of testimony, a charge of sixty-six pages is clear and free from error. It may be that sporadic instances of slight error may be found. Yet a careful reading of all evidence and the entire charge fails to make error appear for which the verdicts and judgments below should be disturbed.

Hence in the trial below, there is

No error.